[Cite as *Swanson v. Schoonover*, 2011-Ohio-2264.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
Nos.   95213, 95517, and 95570

## YVETTE M. SWANSON

APPELLANT

vs.

## JOHN E. SCHOONOVER

APPELLEE

### JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Common Pleas Court
Domestic Relations Division
Case No. D-249602

BEFORE:     Boyle, J., Blackmon, P.J., and E. Gallagher, J.

RELEASED AND JOURNALIZED:     May 12, 2011

ATTORNEY FOR APPELLANT

Andrew J. Simon
Freedom Square II, Suite 380
6000 Freedom Square Drive
Independence, Ohio    44131

ATTORNEY FOR APPELLEE

Michele M. Lazzaro
25700 Science Park Drive
Suite 250
Beachwood, Ohio    44122

GUARDIAN AD LITEM

Susan M. Lawko
56 Muilford Drive
Suite 302
Hudson, Ohio    44236

MARY J. BOYLE, J.:

{¶ 1} Appellant, Yvette Swanson, separately appeals several judgments of the Cuyahoga County Court of Common Pleas, Domestic Relations Division, which this court has consolidated. She raises nine assignments of error for our review. But due to appellee, John Schoonover, passing away during the pendency of this appeal, most of Swanson's issues

are now moot as they address the trial court's decisions relating to the parties' shared parenting agreement.

{¶ 2} There are three issues set forth in Swanson's second, fourth, fifth, and sixth assignments of error that remain for us to decide, i.e., whether the trial court erred: (1) when it found Swanson in contempt of court; (2) when it ordered that each party was responsible for half of the guardian ad litem fees; and (3) when it ordered that Swanson pay costs associated with Schoonover's February 2008 motion to modify or terminate the shared parenting plan. After a thorough review of the record, we find no error on the part of the trial court and affirm.

## Procedural History

{¶ 3} The procedural history and background of this case is lengthy and convoluted, although we note that it is unfortunately — at least in part — due to Schoonover becoming ill in 2009 and passing away in 2010.

{¶ 4} The parties' marriage was terminated by dissolution in November 1996. The dissolution decree incorporated a shared parenting plan for their minor children, E.J., born in 1992, and K.E., born in 1995. The parties shared equal time with the children under the plan.

{¶ 5} The parties did not have any disputes for ten years. But certain events — that are irrelevant to this appeal — led Swanson to move to modify the shared parenting agreement in December 2006. A couple of months later, in February 2007, Schoonover filed his own

motion to modify the shared parenting agreement. Neither party sought to alter the amount of parenting time each received with the children. A magistrate held several hearings on the motions in late 2007.

{¶ 6} Before the magistrate issued his decision, Schoonover filed a new set of motions in February 2008, seeking to modify or terminate the shared parenting plan with respect to K.E., asserting at that time that K.E. now preferred to live with him. Schoonover further requested the trial court conduct an in camera interview with K.E. to determine her wishes.

{¶ 7} In April 2008, the trial court granted Schoonover's motion for an in camera interview. Further, it sua sponte joined K.E. and E.J. as party defendants in the case and appointed a guardian ad litem for them.

{¶ 8} In September 2008, the magistrate heard Schoonover's February 2008 motions. The magistrate never issued a decision on these motions.

{¶ 9} In April 2009, the magistrate issued decisions on the parties' original motions to modify the shared parenting plan, which were filed in December 2006 and February 2007, recommending that Swanson's motion be denied, but granting Schoonover's motion.

{¶ 10} On May 5, 2010, Schoonover filed a notice of dismissal of his February 2008 motion to modify or terminate the shared parenting plan with respect to K.E., which the trial court accepted.

{¶ 11} On May 8, 2010, the trial court adopted the magistrate's April 2009 decision on the parties' original motions, filed in December 2006 and February 2007, in its entirety, denying Swanson's and granting Schoonover's. Ultimately, only minor changes were made to the shared parenting plan, such as transportation and communication issues. The parties still shared equal parenting time with the children under the modified plan, as they always had.

{¶ 12} Swanson filed several notices of appeal, which we have consolidated. She is appealing the trial court's judgment denying her December 2006 motion to modify, the trial court's judgment ordering that each party pay half of the guardian ad litem's fees, and the trial court's judgment accepting Schoonover's voluntary dismissal.

## Contempt of Court

{¶ 13} Swanson argues that the trial court erred when it found her in contempt of court for violating the "first refusal provision of the shared parenting plan." She admits that she violated the provision, but she maintains that Schoonover had never complained about her doing so until she filed her motion to modify in December 2006. We find no merit to her argument.

{¶ 14} "[I]n a contempt proceeding, a reviewing court must uphold the trial court's decision absent a showing that the court abused its discretion." *Nolan v. Nolan*, 11th Dist. No. 2007-G-2757, 2008-Ohio-1505, ¶28, citing *Winebrenner v. Winebrenner* (Dec. 6, 1996) 11th Dist. No. 96-L-033. "A finding of civil contempt requires clear and convincing

evidence that the alleged contemnor has failed to comply with the court's prior orders." *Willoughby v. Masseria*, 11th Dist. No. 2002-G-2437, 2003-Ohio-2368, ¶25, citing *Moraine v. Steger Motors, Inc.* (1996), 111 Ohio App.3d 265, 268, 675 N.E.2d 1345.

{¶ 15} Here, the trial court explained:

{¶ 16} "The Mother admitted that she violated on at least three occasions the provision in the Shared Parenting Plan giving father right of first refusal of having the children with him when the Mother was out of town on an overnight basis, and instead left the children in the care of her boyfriend.   She did so without notifying the Father, knowing that he would object.   Disturbingly, two of these violations occurred after this litigation commenced, and after the Motion to Show Cause was filed.   Therefore, Father's Motion to Show Cause is granted.

{¶ 17} "It is the recommendation that Mother be found in contempt of court.   It is recommended that Mother may purge her contempt by strictly complying with the first refusal right contained in the Shared Parenting Plan and promptly advise Father pursuant to the plan."

{¶ 18} After reviewing the record, we find that the trial court did not abuse its discretion in finding Swanson in contempt of court.   Swanson admits even to this court that she did violate the right of first refusal.

{¶ 19} We further note that the trial court did not sanction Swanson for the contempt finding.   And, although the trial court did not do so, it ordered that she could purge her contempt by strictly complying with the right of first refusal.   There is nothing else in the

record to suggest that she further violated the right of first refusal and, thus, we conclude that Swanson's contempt was purged.

{¶ 20} Swanson's second assignment of error is overruled.

Guardian Ad Litem Fees

{¶ 21} Swanson contends that the trial court erred when it ordered her to pay a half of the guardian ad litem fees. We disagree.

{¶ 22} The magistrate found that the guardian ad litem's fees of $3,750 were reasonable and recommended that each party pay half the fees. The trial court adopted the magistrate's decision, and ordered that Swanson pay $1,675, with credit of $200 that she had already paid toward the fees.

{¶ 23} A trial court's appointment of a guardian ad litem and award of fees must be upheld absent an abuse of discretion. *Gabriel v. Gabriel*, 6th Dist. No. L-08-1303, 2009-Ohio-1814, ¶15. A trial court is given considerable discretion in these matters. Id. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

{¶ 24} Although Swanson acknowledges the trial court had "sound discretion" to apportion the guardian ad litem fees, she contends that it was "wholly inequitable for the trial court to have ordered that she be in any manner responsible" for the fees due to the "unique procedural history and posture of this case." She asserts that it was Schoonover's second

round of motions, filed in February 2008, that precipitated the guardian being appointed in the first place.   Since Schoonover ultimately dismissed these motions before the trial court ruled on them, she maintains that it is unfair to make her pay any of the guardian's fees.

{¶ 25} Swanson further argues that the trial court erred when it relied on the magistrate's finding that she had the ability to pay a portion of the guardian ad litem fees because there was nothing in the record to suggest that she had such ability.

{¶ 26} In his second round of motions, Schoonover did not move for a guardian ad litem to be appointed, but he did move for an in camera interview with K.E.   He asserted that K.E. wished to live with him and requested an in camera interview with her, so that the trial court could determine her wishes.

{¶ 27} R.C. 3109.04(B)(1) provides in part that: "In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."

{¶ 28} R.C. 3109.04(B)(2) states that "[i]f the court interviews any child pursuant to division (B)(1) of this section, *** [t]he court, *in its discretion, may* and, upon the motion of either parent, shall appoint a guardian ad litem for the child."   (Emphasis added.)

{¶ 29} Loc.R. 35(E) provides:

{¶ 30} "Guardians ad litem shall be compensated at the rate of $125.00 per hour for all reasonable and necessary time expended.

{¶ 31} "At the time of the guardian ad litem's appointment, the Court shall order one or both of the parties to post a cash bond with the Clerk of Court, which bond shall not exceed $1,000.00. In the event the Court determines that the parties are unable to post such a bond, the Court may issue an order waiving this requirement. The bond shall be held as security for partial payment of the guardian ad litem fees.

{¶ 32} "Upon motion for guardian ad litem fees, the Court shall conduct a hearing to determine if the fee sought by the guardian ad litem is reasonable and necessary and to determine the amount each party shall contribute toward the fee. Any order for fees shall include a direction to the Clerk of Courts to release the bond to the guardian ad litem."

{¶ 33} Here, the trial court — sua sponte and in its discretion — appointed a guardian ad litem for the children in April 2008. Swanson raised no objection at this time to the guardian being appointed or to posting her portion of the bond security with the clerk of courts for the guardian's services.

{¶ 34} The record reveals that the guardian ad litem was fully involved in the case, even filing her own motion for K.E. to be permitted to attend a three-week exploration summer camp at Wellesley College when Swanson refused to allow her to go. According to

the guardian, K.E. had attended the summer camp for many years, and Schoonover had agreed to pay the entire cost of the camp.

{¶ 35} Swanson opposed the guardian's motion to permit K.E. to attend summer camp, claiming that it infringed on her parenting time with K.E., and asserting that because K.E. was unruly, she did not want her to go. Swanson, however, stated that K.E. could go to the camp on Schoonover's summer parenting time. Ultimately, Swanson agreed to allow K.E. to attend the camp.

{¶ 36} Further, the record reveals that in June 2008, the parties filed a joint motion to continue an evidentiary hearing on Schoonover's February 2008 motions, informing the trial court that they were "attempting to negotiate settlement of the pending issues with the assistance of the guardian ad litem, Susan M. Lawko." At this time, all issues were still pending, mother's motions and father's motions.

{¶ 37} In August 2008, the guardian ad litem sent a letter to the court, informing it that the parties failed to reach "a global resolution" of the case. The guardian then requested the court reset a hearing to resolve the issues, which the court did, holding an evidentiary hearing over a three-day period in September 2008.

{¶ 38} On October 9, 2008, the trial court interviewed the children in camera, with the guardian ad litem present. Later that month, the guardian moved the trial court to award her fees.

{¶ 39} Swanson opposed the guardian's motion for fees, arguing that she should not be responsible for half of the fees because it was Schoonover's second round of motions that necessitated a guardian ad litem being appointed, and because she "question[ed] whether or not all GAL's time was reasonable and appropriate." Notably, Swanson did not assert — as she does here — that she was unable to pay the fees.

{¶ 40} The magistrate's decision regarding the guardian's fees contains findings of fact and conclusions of law, in which the magistrate set forth the rationale for finding that Swanson should pay half of the guardian ad litem's fees based on the evidence adduced at the hearing. The guardian submitted an itemized breakdown of the time she spent on the case, and what services she provided for each session. The magistrate found that the guardian spent 30 hours on the case, at a rate of $125 per hour, for a total of $3,750, and that her fee request was reasonable and necessary.

{¶ 41} The magistrate further found that the guardian ad litem spent a significant amount of time on the case attempting to help negotiate a settlement of all issues that would be in the best interest of all parties, particularly the children. But the magistrate concluded that Swanson "frustrated" the attempts at a "global settlement." And finally, the magistrate found that both parties had the ability to pay the fees.

{¶ 42} Given that the record contains no transcript of the hearing, we must defer to the magistrate's findings. See *J. Norman Stark Co., L.P.A. v. Dahl* (Oct. 19, 2000), 8th Dist. No.

77857. Indeed, we have no basis to conclude that the magistrate's decision is not supported by the evidence or that evidence was improperly considered. Instead, we must presume regularity in the proceedings below and affirm the judgment of the trial court. See *Baltz v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. No. 85704, 2005-Ohio-5153.

{¶ 43} Although Schoonover's counsel admitted at oral argument that no evidence was introduced at the hearing on Swanson's ability to pay, it is irrelevant. Swanson does not cite to any authority to establish that the trial court was required to find that she was able to pay the guardian ad litem's fees, nor do we find any. Further, Swanson never raised the issue of her ability — or lack thereof — to pay in her brief in opposition, and, thus, there was no reason to address this issue at the hearing. Regardless, we conclude that the trial court could order Swanson to pay half of the guardian ad litem's fees even without any evidence of her ability to pay being introduced. See *Butland v. Butland* (June 27, 1996), 10th Dist. No. 95APF09-1151.

{¶ 44} Swanson's fifth and sixth assignments of error are overruled.

## Costs

{¶ 45} In her fourth assignment of error, Swanson claims the trial court erred when it accepted "unilateral dismissal" of Schoonover's February 2008 motion to modify or terminate the shared parenting agreement after the magistrate had already held a hearing on the motions. She argues:

{¶ 46} "Mother raises this error of the trial court not in an attempt to prevent Father's second motion from being dismissed. Mother raises this error in an effort to illustrate how the trial court routinely mishandled this case and because the court did not assess the court costs of the three day trial to Father. For whatever reason, Mother's initial claims took a back seat to other matters by the Magistrate. The end result is that Mother is left here today — over three and a half years since originally filing her Motion to Modify — without justice and with all the costs."

{¶ 47} In *Slowbe v. Slowbe* (Jan. 13, 2000), 8th Dist. No. 75520, this court explained:

{¶ 48} "Civ.R. 54(D) permits a trial court to award a prevailing party the costs of litigating that party's claim. Civ.R. 54(D) provides:

{¶ 49} "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs.

{¶ 50} "The [Ohio Supreme Court] in *Vance v. Roedersheimer* (1992), 64 Ohio St.3d 552, 597 N.E.2d 153 stated:

{¶ 51} "This rule gives the trial court broad discretion to assess costs, and the court's ruling will not be reversed absent an abuse of that discretion. (Citations omitted).'"

{¶ 52} This court has reviewed the lengthy record in this case. Swanson was ordered to pay the costs for her original motion being denied. She was also ordered to pay costs when the trial court denied her motion to show cause.

{¶ 53} As far as this court can determine from the certified docket on appeal, the trial court did not assess costs to either party when it accepted Schoonover's voluntary dismissal of his February 2008 motion to modify or terminate custody. Since the magistrate held a three-day hearing on this motion, there were most certainly costs associated with it. Although we agree with Swanson that she should not have to pay any part of the costs relating to Schoonover's February 2008 motion since he voluntarily dismissed it, the record simply does not support that she was assessed these costs.

{¶ 54} Accordingly, Swanson's fourth assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, P.J., and
EILEEN A. GALLAGHER, J., CONCUR