**[Cite as *Ho v. Co*, 2023-Ohio-3698.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHIA CHI HO, | : | APPEAL NO. C-220319 |
| | | TRIAL NO. DR-2001507 |
| Plaintiff-Appellant, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| CARLOS CHUA CO, | : | |
| | | |
| Defendant-Appellee. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: October 11, 2023

*Chia Chi Ho*, pro se,

*Cordell Law LLP* and *Sarah N. Fox*, for Appellee Father,

*Essig & Evans LLP* and *Ross M. Evans*, for Guardian Ad Litem for the minor child.

**BERGERON, Presiding Judge.**

{¶1} Plaintiff-appellant Chia Chi Ho ("Mother") appeals pro se from a divorce decree, raising various assignments of error relating to issues including guardian ad litem ("GAL") fees, purported due process violations, and alleged ex parte communications. In light of Mother's failure to develop many of her arguments on appeal, and in consideration of our review of the record and applicable case law, we must overrule her first six assignments of error. But because the trial court improperly found her in contempt for the nonpayment of GAL fees, we sustain her seventh assignment of error, reversing the trial court's judgment in part and remanding this cause with instructions to vacate the June 29, 2020 contempt order.

I.

{¶2} Mother and defendant-appellee Carlos Chua Co ("Father") were married in 2005 and share one minor child, C.C., born in 2007. In September 2020, Mother filed a complaint for divorce. Prior to filing the complaint, Mother filed and received a civil protection order removing Father from the family home and preventing any contact between Father and their child. As a result of the order, the magistrate ordered a full investigation through the court's Dispute Resolution Department in October 2020. An agreed entry filed in November 2020 resolved the pending petition for a civil protection order filed by Mother. Also in November, Father was granted supervised parenting time.

{¶3} A few weeks after the agreed entry resolved the domestic violence matter, Father filed an emergency motion for temporary custody and to suspend Mother's parenting time, along with a motion for psychological evaluation. Following a hearing, the trial court granted the emergency motion in December 2020. The trial

court also appointed a GAL to the case at its own discretion. Throughout the course of the litigation, Mother was represented by five different attorneys.

{¶4} Prior to the parenting and property trials, the parties negotiated and signed a shared parenting plan. At trial, however, the court expressed concerns over whether Mother would cooperate with the plan. The court proceeded to address the parties' property in September 2021, but reserved judgment on parenting issues. The trial court entered a decision on property in October 2021. A parenting trial was held in March 2022, and the court issued a decision on custody, support, and fees in June 2022.

{¶5} In June 2022, the trial court also issued a contempt order for Mother's failure to comply with its order for additional GAL fees—requiring Mother to deposit an additional $20,000—issued in May 2022. The contempt order sentenced Mother to 60 days in the Hamilton County Justice Center and fined her $250. The contempt order was stayed pending this appeal.

{¶6} A decree of divorce was entered in July 2022. The decree encompassed the decisions issued by the trial court upon the conclusion of the property trial and the parenting trial. Mother appealed, and this court determined in May 2023 that the trial court's order was not yet final due to its failure to address spousal support. On remand, the trial court made the required changes to finalize the order, and Mother filed a new notice of appeal, which is before us now.

{¶7} We also note that Mother attempted to appeal the domestic violence matter as a part of this action as evidenced by the notice of appeal filed July 8, 2022, which contained the case numbered DV-2001022. But this court's September 2, 2022

3

entry found that any appeal from that case would be untimely, and thus we do not consider it in this opinion.

II.

{¶8}   In her first assignment of error, Mother alleges that the trial court erred in conducting ex parte communications with the GAL and/or Father's counsel on substantive matters throughout the divorce proceedings.  According to Mother, three instances occurred in which the GAL engaged in ex parte communications with the court, as well as one instance of an ex parte communication between Father's attorney and the trial court.  In this assignment of error, Mother also claims that the nunc pro tunc divorce decree judgment was not served properly.

{¶9}   Generally, "[a] judge shall not initiate, receive, permit, or consider *ex parte* communications[.]"  Jud.Cond.R. 2.9(A).  But "when circumstances require it, an *ex parte* communication for scheduling, administrative, or emergency purposes, that does not address substantive matters or issues on the merits, is permitted, provided the judge reasonably believes that no party will gain a procedural, substantive, or tactical advantage as a result of the *ex parte* communication."  Jud.Cond.R. 2.9(A)(1).

{¶10}   Mother speculates, without pointing to any supporting evidence in the record, that the trial judge engaged in improper ex parte communications with the GAL and Father's counsel.  She states in her brief that she intends to file a motion to disqualify the trial judge, so perhaps she plans to further pursue this argument at that time.  At this point, her only argument centers around signatures on various orders that were obtained outside of her presence.  But ex parte communications for non-substantive, administrative purposes, such as obtaining parties' signatures, is not

4

improper. *See id.* And Mother makes no attempt to establish that the purported ex parte communications bore on any of the substantive issues of the case or otherwise provided Father with a procedural or tactical advantage. Our independent review of the record also does not reveal any inappropriate contact between the trial judge and Father's counsel or the GAL.

{¶11} Mother also takes issue with the court's sua sponte issuance of a nunc pro tunc order. But this issue is moot in light of this court's prior decision that the nunc pro tunc order was a nullity.

{¶12} Finally, Mother claims that she was not served with the divorce decree. Again, this argument is conclusory and Mother makes no effort to seriously advance it. From our review of the record, the divorce decree directed the clerk to serve notice of the judgment to the parties and the docket indicates that the notice of appealable judgment was served upon all parties, notifying Mother of the judgment of divorce. And regardless, it is well-established in Ohio that "[t]he failure of the clerk to serve notice does not affect the validity of the judgment[.]" Civ.R. 58(B).

{¶13} We overrule Mother's first assignment of error.

III.

{¶14} In her second assignment of error, Mother maintains that the trial court issued various false statements. Specifically, she takes issue with a number of statements made by the GAL regarding Mother's mental health conditions that the court included in its June 2022 order, as well as the trial court's granting of a motion in limine appointing a court-ordered psychologist.

{¶15} Mother cites to provisions of the Ohio Professional Conduct Rules that indicate that it is professional misconduct for lawyers to engage in conduct involving

dishonesty and that a guardian ad litem must maintain independence, objectivity, and fairness. *See* Prof.Cond.R. 3.3(a)(1) and 8.4(d).

**{¶16}** However, Mother failed to include the relevant transcripts in the record that would substantiate her concerns, despite having been requested to do so. Therefore, we must presume regularity in the proceedings. *See State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, 783 N.E.2d 903, ¶ 21 (1st Dist.) ("When the appellant fails to ensure that the necessary exhibits or transcripts are transmitted to the appellate court, this court has nothing to pass on and must presume regularity in the proceedings in the trial court."). And the report that Mother references was stricken from the record, so we cannot consider it. *See State v. Wilson*, 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 29 ("[I]n reviewing the trial court's judgment, we are limited to the record before the trial court."). Moreover, Mother does not attempt to explain how the identified statements prejudiced her or otherwise affected the proceedings. Accordingly, Mother cannot prevail on this assignment of error, and we overrule it.

IV.

**{¶17}** Third, Mother goes on to challenge the GAL fees ordered in this case. Her substantive arguments under this assignment of error focus on the appointment of the GAL and the GAL's fees.

**{¶18}** First, Mother insists that the trial court failed to comply with the requirements of Hamilton County Court of Domestic Relations Loc.R. 10.5, thereby abusing its discretion, because the GAL sought payment at a rate of $350/hour. "A trial court's appointment of a guardian ad litem and award of fees must be upheld absent an abuse of discretion." *Swanson v. Schoonover*, 8th Dist. Cuyahoga Nos.

95213, 95517 and 95570, 2011-Ohio-2264, ¶ 23, citing *Gabriel v. Gabriel*, 6th Dist. Lucas No. L-08-1303, 2009-Ohio-1814, ¶ 15.

{¶19} Mother correctly cites the current version of the Hamilton County Court of Domestic Relations Loc.R. 10.5, which states that GAL "compensation shall be at the rate of $175.00 per hour for billable time unless otherwise agreed. If the hourly rate is higher than $175.00, the parties * * * shall agree to the rate prior to the GAL commencing work." However, the rule was revised in September 2021 to include the provision that the parties and the GAL must agree to a different rate prior to the GAL commencing work. At the time of the appointment of the GAL, in December 2020, former Loc.R. 10.5 required a $1750 deposit but did not require the parties to agree to a rate *before* the GAL commenced his/her duties. Rather, it stated: "Compensation shall be at the rate of one hundred and seventy-five dollars ($175.00) per hour for both in-court and out-of-court billable time unless otherwise agreed." Former Loc.R. 10.5(A).

{¶20} At the time the GAL was appointed, then, the parties were required to "otherwise agree[]" to a rate that deviates from $175/hour. Here, Mother did just that. In the months following his appointment, the GAL issued multiple invoices that contained his hourly rate. Mother paid $15,000 in GAL fees in March 2021, without objection. Her payment of the fees, in addition to her failure to object to the fees for over four months following the issuance of the first order for payment of GAL fees, indicates, at a minimum, her implicit agreement to the GAL's rate of $350/hour. Notably, Mother was represented by counsel at the time.

{¶21} While we agree that the total fees accrued were extremely high, and cause us grave concern, as a legal matter, the mandates of former Loc.R. 10.5 were not

violated due to Mother's acceptance of the GAL's rate. And Mother fails to point us toward any authority indicating that any actual legal error occurred or that the trial court otherwise abused its discretion in this matter.

{¶22} Second, Mother contends that the trial court erred in ordering payment of GAL fees without receiving or reviewing an itemized statement. But attached to the court orders for payment of GAL fees are itemized statements, indicating that the trial court did, in fact, receive and review itemized statements of the GAL fees. And in these orders, the trial court noted that it found the fees to be reasonable. Within this second issue, Mother tosses out a number of unrelated claims. But she fails to explain or make an argument for these claims beyond conclusory statements that these matters involved errors. Nor does she cite to any authority in support of her claims. We therefore disregard these issues. *See* App.R. 16(A)(7); App.R. 12(A)(2).

{¶23} Third, Mother argues that the trial court erred in refusing to hold hearings on her motions contesting the GAL fees. Again, Mother fails to cite to any authority requiring a trial court to convene a hearing before ruling on a motion in opposition to GAL fees besides claiming that the local rules require it. And there are no requirements in the local rules that a hearing be held on an objection to GAL fees. *See* Loc.R. 10.5. Based on our review of the applicable law, Mother has failed to establish that a hearing was required on this matter.

{¶24} The fourth issue raised by Mother touches on various matters relating to the payment and reasonableness of GAL fees. She does not seriously advance any of these arguments, but as we understand them, our independent review of the record does not indicate any instances of reversible error.

8

{¶25} Fifth, Mother argues that the trial court erred in denying her motion to discharge the GAL. Once again, she raises a number of issues without substantiation. She again raises her concerns with the GAL rates, alleged ex parte communications, and the lack of hearings on her motions in opposition to GAL fees, all of which we address above. The only new issue that she features here concerns the trial court's denial of her motion to discharge the GAL. But she fails to present any argument as to why she believes the trial court erred. And from our review of the record, the trial court did not abuse its discretion. The trial court noted that it intended to discharge the GAL once the case was concluded, as is standard practice. *See* Loc.R. 10.4. Mother does not attempt to formulate an argument as to how this was in error.

{¶26} Sixth and finally, Mother contends that the trial court erred in allowing the GAL to write and submit the court order for payment of GAL fees. But besides noting this issue in the introduction to this assignment of error, she fails to raise it again or develop it. No analysis, record citations, or authorities are contained in the brief relating to this issue, so we are unable to conduct a review on appeal.

{¶27} We overrule Mother's third assignment of error.

V.

{¶28} In her fourth assignment of error, Mother contends that the trial court erred in failing to address premarital assets, gifts, and delayed maintenance that were not disputed at trial.

{¶29} R.C. 3105.171(B) mandates that "the court shall * * * determine what constitutes marital property and what constitutes separate property" in divorce proceedings. This mandate requires that the trial court "value and divide all property in a divorce." *Smoyer v. Smoyer*, 10th Dist. Franklin No. 16AP-365, 2019-Ohio-3461,

¶ 30, quoting *Hackman v. Hackman*, 10th Dist. Franklin No. 08AP-516, 2009-Ohio-820, ¶ 23.

{¶30} Besides generally alleging that certain premarital assets, gifts, and delayed maintenance were omitted from the court order distributing the parties' property, Mother fails to identify any specific items that she believes were omitted. Rather, she points us towards page ranges in the trial transcript that discuss various assets, expenses, and gifts.

{¶31} Mother's failure to identify any specific items that were omitted from the court order limits our ability to review this assignment of error. But from our independent review of the identified portions of the transcript, we are unable to identify any assets, maintenance, or gifts that were improperly omitted from the trial court's order distributing the parties' property. We therefore overrule this assignment of error.

VI.

{¶32} In the fifth assignment of error, Mother argues that her constitutional due process rights were violated when the trial court struck certain matters without affording her a hearing or providing an explanation for why the matters were stricken. Mother again presents a number of other issues in this assignment of error.

{¶33} First, Mother contends that the trial court abused its discretion when it struck various matters from the record. Civ.R. 7(B)(2) permits the court to issue orders "without oral hearing" unless a hearing is otherwise required. Mother presents no authority requiring a hearing on the matters she raises. Moreover, she makes no attempt to argue that she was prejudiced. And our review of the record does not reveal any abuse of discretion on the part of the trial court in striking the identified filings.

{¶34} Second, Mother argues that the trial court erred in providing the shared parenting plan to Father's and Mother's employers. She argues that "providing false information to [each party's] employer does not comply with the law." But from our review of the record, the factual findings contained in the shared parenting plan comport with the facts in the record. And our review is limited by the fact that Mother fails to identify which information in the shared parenting plan she believes to be "false."

{¶35} Third, Mother alleges that the trial court erred in not including a parenting time schedule in its final decree. But the final divorce decree *does* address this issue. With respect to parenting time, the order states: "All parenting time of Mother's shall be at the discretion of [C.C.] and Father. [C.C.] shall be able to select the time spent with Mother in order for him to organize his own schedule." The order goes on to expound on this provision, and also allows Mother to have vacation and extended time with C.C. if C.C. and Father agree. Mother does not acknowledge this or attempt to argue that the trial court erred in so ordering.

{¶36} Fourth and finally, Mother maintains that the trial court erred in granting additional GAL fees after the GAL filed a motion to strike the shared parenting plan. She argues that he used the judicial system to collect clearly excessive fees. But we addressed the GAL fees in the third assignment of error, so this claim is redundant.

{¶37} We overrule Mother's fifth assignment of error.

VII.

{¶38} In her sixth assignment of error, Mother contends that the trial court violated her due process rights by denying discovery and failing to rule on certain motions. In this assignment of error, she raises five issues.

{¶39} First, Mother argues, once her domestic violence case was transferred to another trial judge, the trial court erred in failing to rule on a motion related to the case after it was transferred. However, this court ordered that any appeals related to the domestic violence case (DV-2002022) would be untimely, foreclosing Mother's ability to challenge that case on appeal.

{¶40} Second, Mother takes issue with the trial court's denial of the subpoena duces tecum filed by Mother to conduct discovery into the GAL's billing practices without first making an in-camera inspection of the files sought.

{¶41} A trial court has broad discretion in discovery matters, including whether to grant or deny a motion to quash a subpoena, and its decision will not be reversed on appeal absent an abuse of discretion. *See Kaplan v. Tuennerman-Kaplan*, 9th Dist. Wayne No. 11CA0011, 2012-Ohio-303, ¶ 10, citing *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 18. Mother points us towards the Twelfth District's decision in *Hogan v. Hogan*, 12th Dist. Butler Nos. CA2002-09-216 and CA2002-09-225, 2003-Ohio-4747, ¶ 29, which held: "We agree that a trial court has discretion to grant a motion to quash a subpoena for a guardian ad litem's files if the court finds that it would not be within the children's best interest to allow disclosure of the files. But in order to make such a finding, the trial court must first make an in camera inspection of the files sought." However, *Hogan* does not cite to any authority in setting forth

12

this mandate, and we are unable to ascertain any statutory source or binding case law requiring an in-camera inspection under these circumstances.

{¶42} It is recognized in Ohio that refusing to grant discovery from a GAL during custody cases to protect the child's best interest is not an abuse of discretion. *See In re J.L.R.*, 4th Dist. Washington No. 08CA17, 2009-Ohio-5812, ¶ 43; *Hogan* at ¶ 29. Here, the trial court denied Mother's discovery request to review the GAL's billing practices, explaining that it did so to protect the relationship between the GAL and C.C. In light of the trial court's appropriate rationale for granting the motion to quash as well as the court's inherent power to regulate discovery pursuant to Civ.R. 26(C), we conclude that the trial court did not abuse its discretion in this matter.

{¶43} As to Mother's third argument that the trial court erred in not allowing access to the minor child's medical records, she presents this as an issue in the introduction to the assignment of error but fails to addresses it in the substance of the brief. With no argument, law, record citations, or any other sort of analysis on this issue, it is impossible to conduct a review on appeal.

{¶44} Mother's fourth argument, relating to the GAL's motion for a protective order, is similarly conclusory. She argues that the motion did not comply with the requirements of R.C. 3109.051 and includes a quotation to a case summarizing the text of the statutory provision. However, she does not make any argument supporting the issue. She fails to explain how the motion did not comply with statutory requirements and she did not otherwise explain her position. From our independent review of the record, insofar as we understand her argument, we do not see any indication of reversible error.

13

**{¶45}** Fifth and finally, Mother takes issue with the fact that the trial court did not rule on a motion filed by Mother, and also that it issued various orders without holding hearings on the matters.

**{¶46}** Within this issue, Mother first argues that the court erred in failing to issue a decision or hold a hearing on her motion for contempt regarding parenting time.

**{¶47}** But "it is well-established that when a trial court fails to rule on a motion, [the appellate] court will presume the motion was overruled." *Sparks v. Sparks*, 12th Dist. Warren No. CA2015-10-095, 2016-Ohio-2896, ¶ 12, citing *Reynolds v. Reynolds*, 12th Dist. Butler No. CA94-08-162, 1995 Ohio App. LEXIS 2401, 6 (June 12, 1995). Assuming the trial court's failure to rule on the motion deems the motion overruled, Ohio law also provides, "[A] trial court can reasonably exercise its discretion to refrain from holding a hearing on a motion for contempt that the court intends to deny. * * * [A]nd the movant cannot appeal on grounds of failure to hold a hearing without showing prejudice in that the motion would have been granted[.]" *Dyer v. Gomez,* 7th Dist. Noble No. 21 NO 0484, 2022-Ohio-1127, ¶ 58, citing *Anderson v. Fleagane*, 7th Dist. Belmont No. 21 BE 0020, 2022-Ohio-1120, ¶ 59-60. Mother does not make any argument that her motion would have been granted or otherwise attempt to establish prejudice. Moreover, as Father notes, she never filed a request for a hearing or requested the trial court to address it at the final hearing in the divorce action. Mother's constitutional rights were not violated by the trial court's failure to rule on this motion or hold a hearing to address it.

**{¶48}** Next, Mother takes issue with the trial court's December 16, 2020 order that the court issued without first holding a hearing. According to her, this deprived

her of fundamental rights to notice and a hearing and does not comport with due process requirements.

{¶49} The order to which Mother refers granted an emergency motion filed by the GAL and issued temporary orders regarding parenting time and supervised contact. As far as the record shows, Mother signed the agreed entry regarding the temporary orders that same day and there is no evidence that she requested a hearing or otherwise objected to the order. In light of Mother's signature on the agreed entry regarding the orders, as well as her failure to make any concrete argument or cite to any law to support her point, we cannot say that her constitutional rights were violated.

{¶50} Finally, Mother contends that the trial court erred in granting the GAL's motion to maintain the temporary custody schedule without a hearing. Again, according to Mother, this deprived her of fundamental rights to notice and a hearing and does not comply with due process requirements.

{¶51} On August 18, 2021, the GAL filed a motion to maintain the temporary schedule, which the court granted without a hearing on August 23. Again, however, Mother points us toward no case law that indicates that failure to hold a hearing on a motion to maintain a temporary custody schedule contravenes her constitutional rights. In fact, in stark opposition to her argument, pursuant to R.C. 3109.043, "In any proceeding pertaining to the allocation of parental rights and responsibilities for the care of a child, * * * the court, without oral hearing and for good cause shown, may make a temporary order regarding the allocation of parental rights and responsibilities for the care of the child while the action is pending." Nothing in the record reflects that Mother opposed the motion, requested a hearing on the motion, or otherwise

15

objected to the trial court's decision at the trial level. And there is no evidence in the record that Mother did not have notice of this order, as she claims. A full evidentiary hearing was conducted before the trial court entered its full custody order, so again, Mother's constitutional rights were not violated in this instance.

**{¶52}** We therefore overrule Mother's sixth assignment of error.

VIII.

**{¶53}** In her seventh and final assignment of error, Mother insists that the trial court erred in using its powers of contempt to enforce payment of GAL fees, arguing under *Burke v. Burke (In re Pappas)*, 8th Dist. Cuyahoga Nos. 101059 and 101060, 2014-Ohio-5279, ¶ 1, that a court cannot use its powers of contempt to compel the payment of GAL fees. Notwithstanding the fact that Mother had already paid thousands of dollars in GAL fees, the trial court's June 29, 2022 order found her failure to pay $20,000 in additional GAL fees warranted a contempt finding and a 60-day jail sentence.

**{¶54}** Section 15, Article I, of the Ohio Constitution prohibits imprisonment for debt in civil actions. "The duty to pay court costs is a civil obligation arising from an implied contract [with the court], and as such, it is a debt within the purview of Section 15, Article I." *Raleigh v. Hardy*, 5th Dist. Licking No. 08 CA 0140, 2009-Ohio-4829, ¶ 23, citing *Strattman v. Studt*, 20 Ohio St.2d 95, 253 N.E.2d 749 (1969). A court cannot use contempt to "indirectly impose[] a jail sentence for nonpayment of court costs." *State v. Ellis*, 2d Dist. Montgomery No. 22189, 2008-Ohio-2719, ¶ 22. This point begs the question – are GAL fees court costs?

**{¶55}** This court already answered that question in the juvenile court context, finding GAL fees to constitute court costs. *See In re Bailey*, 1st Dist. Hamilton No. C-

16

060700, 2007-Ohio-4192, ¶ 17. We explained, "The authority to levy GAL fees against a party in a private custody action is found in Juv.R. 4(G)." *Id*. at ¶ 16. Juv.R. 4(G), in turn, provides: "[t]he court may fix compensation for the services of appointed counsel and guardians ad litem, tax the same as part of the costs and assess them against the child, the child's parents, custodian, or other person in loco parentis of such child." If the juvenile court assesses GAL fees, "it is directed to tax the fees as part of the costs of the proceedings." *In re Bailey* at ¶ 17. Because Juv.R. 4(G) denotes GAL fees as costs, the obligation to pay GAL fees represents "a civil obligation for which a party may not be incarcerated." *Id*. Thus, this court found "the jail sentence for contempt [for the nonpayment of GAL fees] was improper." *Id*. at ¶ 18.

{¶56} In domestic relations proceedings concerning divorce and separation, Civ.R. 75(B)(2) provides that "[w]hen it is essential to protect the interests of a child, the court may join the child of the parties as a party defendant and appoint a guardian ad litem and legal counsel, if necessary, for the child and tax the costs." Joinder of the child as a party to the dispute is not mandatory for the appointment of a GAL under Civ.R. 75(B)(2). *See In re A.G.*, 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 44 (finding the appointment of a GAL under Civ.R. 75 "does not make a child a proper party" in such proceedings). Here, the GAL participated as a party to the litigation, engaging in extensive litigation conduct over a prolonged period of time. In light of this unique record, we find that the GAL appointment in this particular case fell within the scope of Civ.R. 75(B)(2).

{¶57} Just as Juv.R. 4(G) denominates GAL fees as court costs for juvenile proceedings, Civ.R. 75(B)(2) does so as well in domestic relations proceedings. Accordingly, the obligation to pay GAL fees under Civ.R. 75(B) represents a civil

obligation for which a party may not be incarcerated. We also note that neither appellee here seriously defends the trial court's contempt order, nor do they offer any specific basis to uphold it. Accordingly, on this record, the trial court improperly used its contempt powers to enforce Mother's payment of the additional $20,000 in GAL fees.

{¶58} We therefore sustain Mother's seventh assignment of error.

\* \* \*

{¶59} In light of the foregoing analysis, we sustain Mother's seventh assignment of error, reversing the trial court's judgment in part and remanding this cause with instructions to the trial court to vacate the contempt order. We affirm the trial court's judgment in all other respects.

Judgment affirmed in part, reversed in part, and cause remanded.

**WINKLER, J.,** concurs.
**KINSLEY, J.**, concurs in part and dissents in part.

**KINSLEY, J.**, concurring in part and dissenting in part.

{¶60} I concur with the majority's resolution of all assignments of error in this case except for the third assignment of error which challenges the GAL's fees. Having carefully reviewed the record in this regard, I would sustain mother's third assignment of error in part and therefore dissent from this portion of the majority's decision.

{¶61} During the 20-month period from December 2020, when the GAL was first appointed by the court, to August 2022, when the case essentially concluded at the trial court level, the trial court ordered the parties to pay $155,853.53 to the GAL

18

for his services.[1]  The majority is correct in that Mother's brief is on the sparse side in terms of both detail and authority as to why the trial court erred in approving such exorbitant fees.  But the amount alone makes my jaw drop, and I cannot condone the trial court's approval of such excessive fees in this case.

**{¶62}**  Perhaps given how costly the proceedings below wound up being, Mother represented herself in this appeal.  While pro se litigants are held to the same standards as parties who have attorneys, courts also entertain all cognizable arguments that unrepresented litigants present "in the interest of fairness and justice." *Fontain v. Sandhu*, 1st Dist. Hamilton No. C-200011, 2021-Ohio-2750, ¶ 13.  After reading Mother's brief, it is clear to me that she takes issue with the overall amount of the GAL's bills and with the process by which the trial court approved each set of bills the GAL submitted.  I have therefore reviewed these issues for possible error.

**{¶63}**  To begin, I note that neither Mother nor Father sought the appointment of a GAL in this case.  Rather, the trial court appointed the GAL sua sponte when the parties' efforts to resolve the question of custody of their minor son broke down.  Thus, the parties did not seek to incur GAL fees of their own volition, a factor that makes the total amount of the fees all the more shocking.

---

[1]  A motion filed before this court, to which the GAL did not respond, suggests he may also be billing the parents for his work on this appeal, meaning that the total amount he has billed for this matter may well be in excess of the $155,853.53 the trial court already approved.  While not pending before us, any motion for payment of GAL fees for this appeal would be of dubious merit.  For one thing, by its original terms, the GAL's appointment terminated upon the filing of the final order in the case by the trial court, and the GAL is therefore no longer appointed.  For another, the GAL appeared before this Court solely to defend his heightened hourly rate and the overall sum of his bills in the trial court, issues which relate solely to his personal financial stake in the outcome of this matter and not the best interests of the child in question.  *See* Sup.R. 48.03(D) (describing responsibilities of GAL, which do not include responding to challenges to GAL's fees on appeal).

**{¶64}** Despite that fact, I do not doubt that the GAL provided beneficial services to both the parents and their son and, as a result, he is entitled to fair compensation for those services. However, a number of statutes, rules, and policies govern what is fair and carefully circumscribe the trial court's authority to authorize fees for appointments such as this one. In my opinion, the trial court did not comply with those limitations in a number of significant respects, and I would award Mother relief in part based on a correct application of the rules that govern GAL fees in divorce cases.

### 1. *The trial court should not have approved block-billed time entries.*

**{¶65}** The Ohio Supreme Court has established a rigid rule against block-billing—or the practice of combining a number of different legal tasks into a single billable entry. *See State ex rel. Harris v. Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, ¶ 6-7. This is so because combining multiple tasks into a single entry complicates the process of determining whether the time spent on a particular activity is reasonable. *Id.* at ¶ 6. As a result, the Ohio Supreme Court has warned that it will not approve attorney fees applications that contain block-billed entries and will potentially deny *all* fees on the basis of this mistake. *Id.* at ¶ 7.

**{¶66}** Despite this clear guidance, the trial court approved a significant number of block-billed entries on the GAL's bills without explanation or justification.

**{¶67}** At the very least, this error should have become apparent to the trial court in July of 2021, when Mother began challenging the GAL's fees and asking the trial court to scrutinize them. At that time, the GAL submitted his invoices from December of 2020 through the end of June 2021 to the court. Those invoices

20

contained a significant number of block-billed time entries that should not have been approved for payment under the *Rubino* rule.

{¶68}    The following chart itemizes the block-billed services exactly as they appeared on the invoices the GAL submitted to the court in July of 2021.  They are modified only to conceal the name of parties' minor child.

{¶69}  In many cases, the tasks are not separated by punctuation or any obvious line breaks, making it difficult at times to even discern when one task stops and another begins.  And that is a separate problem with the bills.  People who are paying into the six-figures for services are entitled under the rules to know what they are paying for.  *See* Sup.R. 48.03(H)(1) (requiring GALs to keep accurate time records); (H)(2) (requiring GALs to provide monthly invoices to the parties); (H)(3) (requiring GALs to submit itemized monthly invoices to the court).  But this GAL's bills contain many generic time entries like "investigation" or "emails to counsel."  I can relate to Mother's desire for additional explanation about where her money is going.

| DATE | SERVICES | TIME |
|---|---|---|
| 12/3/2020 | Review of Pleadings phone call w/Children's Services communications to Counsel of record | 1.00 |
| 12/7/2020 | Review of pleadings and multiple Documents phone call with multiple professionals, Counsel and parties Investigation | 4.25 |
| 12/9/2020 | Meet with Carlos Investigation Review Documents e-mails with Therapists Observe Visitation and meet with C. at Children's Home | 3.50 |
| 12/11/2020 | Investigation Numerous communications and meetings with Professionals | 4.00 |
| 12/14/2020 | Telephone call with Cindy Chiaro and Nicole Schilds e-mails with C. | 1.25 |
| 12/16/2020 | Home Visit numerous phone call w/Counsel and Court Review and Revise Entry e-mails with Professionals Revisions and edits to entry. phone call w/ Court | 7.50 |
| 1/5/2021 | Telephone call with numerous professionals and Counsel numerous communications from C. | 2.50 |

| 1/6/2021 | Conference with Judge phone call w/ Schild email to professionals | 1.50 |
|---|---|---|
| 2/1/2021 | Attendance at Phone Conference with Judge emails with Carlos | 0.75 |
| 2/11/2021 | Meet with Carlos email to Chiachi and Counsel e-mails with Therapists | 1.25 |
| 2/23/2021 | E-mails from/to All professionals and parties phone call with Schild and Counsel and Haley | 1.75 |
| 2/24/2021 | E-mails from/to Parties and Counsel review of recordings | 1.50 |
| 2/25/2021 | E-mails from/to everyone. Multitude and conference with Court | 2.00 |
| 3/1/2021 | E-mails from/to Parties and Counsel phone call with Counsel and numerous texts with parties from 2-28 and this date. Zoom Meeting with Karl and Mom, FaceTime with C. and numerous communications | 3.75 |
| 3/3/2021 | E-mails from/to Chiachi, Dr. Connor's Office and Counsel e-mail to settlement discussions with up Assessment with CCPC. Phone call with Schild | 1.50 |
| 3/24/2021 | Phone Call w/ Brenda Patton Numerous e-mails with Counsel | 1.00 |
| | Phone Conference with Patton and e-mails to Counsel[2] | 1.50 |
| 3/29/2021 | Drafting of Motion to Modify Temporary Orders Numerous communications from and to Counsel and Patton phone call w/ Chiachi | 2.00 |
| 3/30/2021 | E-mails from/to Karl and Patton Text messages and e-mails from C. and to Chiachi | 1.25 |
| 4/1/2021 | E-mails from/to Counsel and texts with C. phone call w/Tepe | 1.25 |
| 4/7/2021 | Review of Court Order on Motion e-mails to parties, Counsel and communication with C. | 1.40 |
| 4/9/2021 | Communicate (with client) and multiples e-mails to Counsel | 0.75 |
| 4/12/2021 | E-mails from/to C. over the weekend. Phone call w/ Jennifer Szenghi multiple e-mails from Carlos and to Counsel | 1.75 |

---

[2] These two entries for the same date appear to document the same tasks, but are for different amounts of time. It is unclear if the time entries are redundant of one another, such that one should be stricken outright, or if the GAL had two separate phone conversations with Brenda Patton on March 24, 2021 and billed separate sets of emails with counsel on that same day. The fact that the calls are not separately logged complicates our determination of whether it is the former or the latter. If we knew, for instance, that the GAL's phone call with Patton lasted 0.5 hours in both entries, it would seem as though the entries were redundant. But if the GAL itemized one phone call lasting 0.5 hours and one phone call lasting 0.2 hours, we would better understand that he spoke with Patton twice on the same day. As it is, it seems that the GAL billed the same tasks twice and that his fees should be discounted accordingly. This is the type of review the trial could should have undertaken and did not.

| 4/21/2021 | E-mails from/to Mental Health Professionals phone call w/ Therapist | 1.50 |
|---|---|---|
| 4/23/2021 | Meet with Therapists Investigation Notes to file and e-mails to Connors | 2.50 |
| 4/27/2021 | Telephone call with Dr. Connor e-mail to Professionals Draft Order phone call w/ Counsel | 2.75 |
| 4/28/2021 | E-mails from/to Counsel phone call w/ Counsel e-mails from Carlos | 1.75 |
| 5/3/2021 | Review of Motions filed by Tepe phone call w/Fox revise letter to Boat review Substitution of Counsel e-mails with Fox | 1.25 |
| 5/4/2021 | Appear for/attend Court Hearing phone call from and w/ Tepe review and prepare for hearing Numerous communications wit [sic] Parties and C. after hours dealing with issues | 3.75 |
| 5/5/2021 | Review of File pleadings and Entries e-mail to all professionals. | 3.00 |
| 5/10/2021 | Review/analyze Judge's Decision e-mail to Connors and Counsel Conference with Schild | 1.50 |
| 5/12/2021 | Meet with C. and Nicole e-mail to Chia Chi's therapists | 1.25 |
| 5/19/2021 | Correspondence to and from Ward, Counsel and Therapists over last 5 days. | 3.50 |
| 5/20/2021 | Telephone call with Dr. Barbara Boat and noes [sic] to file. Phone call w/ C. Multiple lengthy text messages phone call with Chia Chi. | 3.00 |
| 5/24/2021 | Investigation and Schduling [sic] of all Evaluation Appointments | 2.25 |
| 5/31/2021 | Investigation and numerous communications including reviewing filings and e-mails as well as phone call w/ numerous professionls [sic] from 5-27 through 5-31 | 6.50 |
| 6/1/2021 | Attendance at Court Pre-Trial Report e-mails with Schild and Connor's Office Meet w/ C. | 1.75 |
| 6/2/2021 | E-mails from/to Counsel andnumerous [sic] communications with C. | 0.50 |
| 6/3/2021 | Attendance at Phone Conference with Court. Numerous e-mails from and to Cousel [sic] Review Documents to be sent to Connors Meet w/ C. | 1.50 |
| 6/7/2021 | Telephone call with Schild Review e-mails phone call to Turpin Counselor | 0.75 |
| 6/8/2021 | Telephone call with Kathy Roberts and Nancy Aniskovich e-mail to professionals and Connor's office Draft Motin [sic] for Deposit of Fees. Numerous e-mails re; [sic] Transportation for Evaluation | 2.75 |
| 6/14/2021 | Attendance at Evaluation Session with C. Review Research on Motion to Quash several e-mails with records department of UC | 3.25 |

| 6/15/2021 | Correspondence from and to C. Review research on Protective orders Review Documents from UC | 1.25 |
| 6/16/2021 | E-mails from/to Counsel texts from and to C. | 0.75 |
| 6/21/2021 | Attendance at Evaluation Session with C. conf w/ Pam while parties in Session | 3.75 |
| 6/23/2021 | E-mails from/to Chia Chi and phone call w/ Pam Schwerz e-mail to and frm [sic] Schild and to Counsel | 0.75 |
| 6/25/2021 | Review documents filed by Tepe and text messages with C. | 0.50 |
| 6/30/2021 | Review of Court fle [sic] text to C. re: Dr. Connor appointment | 0.25 |

{¶70} This totals 101.15 hours, representing $37,931.25 of GAL time, all of which the trial court should not have approved because it was block-billed. *See Rubino*, 156 Ohio St.3d 296, 2018-Ohio-5109, 126 N.E.3d 1068, at ¶ 6-7.

{¶64} Looking at the GAL's motion for additional fees filed on October 4, 2021, his September 2021 invoice equally contains block-billed time entries that violate the Ohio Supreme Court's directive. There are 17.25 hours of block-billed time in that invoice, representing $6,468.75 in fees that should be discounted.

{¶65} And in the GAL's March 2022 motion for additional fees, the attached invoice from March 2022 contains an additional 11.8 block-billed hours representing $4,425 in fees that should be cancelled.

{¶66} In total, the trial court therefore approved $48,825 in block-billed time that should have been excluded under the Ohio Supreme Court's decision in *Rubino*.[3] I find this to be error and would sustain Mother's third assignment of error with respect to these fees.

### 2. *The trial court should not have approved fees for time spent on tasks that fell outside the scope of the GAL's defined role.*

---

[3] I note that not all of the GAL's invoices are available in the appellate record, and the trial court appears to have approved fees for the GAL in excess of the invoices that were submitted with the motions for additional fees.

24

{¶67} A further problem with the GAL's fees in this case is that he charged the parties for work that fell outside the scope of his appointment. That appointment was pursuant to Sup.R. 48.03(D), which defines the role and responsibilities of guardians ad litem in domestic relations cases. Pursuant to that rule, GALs are to:

(1) Become informed about the facts of the case and contact all relevant persons;

(2) Observe the child with each parent, foster parent, guardian or physical custodian;

(3) Interview the child, if age and developmentally appropriate, where no parent, foster parent, guardian, or physical custodian is present;

(4) Visit the child at the residence or proposed residence of the child in accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian, and other significant individuals who may have relevant knowledge regarding the issues of the case. The guardian ad litem may require each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present.

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health/or substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

**{¶68}** The trial court's order appointing the GAL in this case vested him with four specific responsibilities: 1) review records pertaining to the child and his family; 2) interview school personnel, medical and mental health professionals, and relevant court workers and obtain records from these sources; 3) review relevant pleadings in the case; and 4) perform any other necessary investigation to make a recommendation about the child's best interests.

**{¶69}** The GAL's work in this case, however, exceeded those mandates in some significant respects. For example, the GAL spent approximately 2.25 hours scheduling appointments for the child, something a parent, not a GAL, typically does.[4] The GAL also drove the child to appointments with therapists and waited for him there on two occasions, spending 6.5 hours doing so. While on one of these occasions the GAL interviewed someone at the therapist's office, the fact the entry is block-billed complicates the process of understanding exactly how much time he spent in the car

---

[4] It is difficult to ascertain exactly how much time the GAL spent making appointments, because the task is contained in a block-billed time entry.

versus how much time he spent in an interview. In any event, at least some of the time he billed was for transporting the child to and from appointments.

{¶70} These tasks fall outside of the GAL's defined role. While the GAL is to be commended for being a supportive adult in the life of a young person during his parents' divorce, I do not read the law to enable him to charge the parents for making appointments and transporting a child. To the contrary, the GAL's role is to be an investigatory one, focused on gathering information and making a recommendation to the court. *See* Sup.R. 48.03(D). I therefore would discount the entries listed in the chart above that fall outside of the GAL's proscribed role for that additional reason as well.

### 3. *The trial court did not assess the parties' ability to pay prior to approving the GAL fees as required by Sup.R. 48.02(H)(1).*

{¶71} Turning now to the overall amount of the fee award, I note several technical problems with the trial court's process. Notably, Sup.R. 48.02(H)(1) requires the trial court to consider the parties' ability to pay before a deposit for GAL fees and allows the trial court to reconsider that decision at any point throughout the proceedings.

{¶72} There is no evidence in this case that the trial court considered the parties' ability to pay $155,835.53 to the GAL prior to ordering that amount, although there is evidence in the record that Mother may have struggled to make her assessments. (She paid $100 at one point, and $375 at one point, even though she owed thousands upon thousands of dollars.) While the parties in this case are far from living in poverty, their financial means are not endless. No one's are.

27

**{¶73}** To be sure, the rule that requires consideration of a party's financial wherewithal exists for good reason. In fact, very few people can afford to pay so much money without serious consequences to their financial health, stability, and decision-making. That the parties could be held in contempt and jailed for not paying makes an assessment of their ability to pay up front all the more paramount. *See* Hamilton County Court of Domestic Relations Loc.R. 10.4 (noting that parties who do not pay GAL fees can be held in contempt and incarcerated).

**{¶74}** Mother objected on numerous occasions to the amount of the GAL's bills, and she suggested that her finances would be better spent on saving for her son's college education and other needs. Mother is gainfully employed (and impressively so as a college professor in a STEM field), but her annual income is less than the overall amount of the GAL's bills. Mother was also going through a divorce at the time the GAL's bills were landing, and she had expenses related to equalizing assets and debts with Father as a result. These factors suggested that Mother may have struggled to afford the exorbitant fees the GAL was charging.

**{¶75}** Sup.R. 48.02(H) required the trial court to assess whether all of these understandable circumstances impeded Mother's ability to pay the bills prior to a court order requiring her to do so. Otherwise, the trial court was just setting her up to fail.

**{¶76}** But the trial court made no such inquiry. Instead, it approved every subsequent request for additional GAL fees without inquiring as to the financial burden it was imposing on the parties. Unlike the majority, I would find this to be error.

**{¶77}** However, insufficient information exists in the appellate record from which to assess Mother's ability to pay, and Mother was never given the opportunity to create such a record. I would therefore remand the matter to the trial court for further proceedings consistent with Sup.R. 48.02(H).

### 4. *The overall fee award should be consistent with Loc.R. 10.5 and Jud.Cond.R. 2.13(C).*

**{¶78}** Finally, I consider the overall amount of the fee award in the context of Hamilton County Court of Domestic Relations Loc.R. 10.5 and Jud.Cond.R. 2.13(C). Both policies set forth principles that are helpful in assessing whether the overall fee award in this case is reasonable, although a court is not the proper forum to actually enforce the judicial conduct rules. *See In re T.D.J.*, 8th Dist. Cuyahoga No. 100972, 2014-Ohio-5684, ¶ 6.

**{¶79}** The Hamilton County Domestic Relations Court expects parties to deposit $1,750 when a GAL is appointed in their case. *See* Hamilton County Court of Domestic Relations Loc.R. 10.5. Domestic relations courts across the state have adopted similar guidelines. *See, e.g.,* Summit County Court of Domestic Relations Loc.R. 34.06. In fact, one court—the Summit County Domestic Relations Court—caps GAL fees at $1,200 total, creating a benchmark for what is reasonable in these kinds of cases. *Id.*

**{¶80}** The GAL's fees in this case, however, totaled *over 88 times* what the Hamilton County Court of Domestic Relations Local Rule establishes as the deposit amount. *See* Hamilton County Court of Domestic Relations Loc.R. 10.5. Having extensively looked, I can find no other case in the history of Ohio courts where the fees for an appointed GAL came anywhere close to the amount billed in this case. *See, e.g.,*

29

*Burke v. Burke (In Re Pappas)*, 8th Dist. Cuyahoga Nos. 101059 and 101060, 2014-Ohio-5279, ¶ 3 (citing entry approving $5,214 in GAL fees against each parent). There is no reason why this case would be so exponentially more expensive to resolve.

{¶81} On top of that, Jud.Cond.R. 2.13(C) prohibits judges from approving compensation for appointees beyond the fair value of services rendered. It is hard for me to see a bill exceeding $150,000, accrued over a period of less than two years, as being fair, particularly when the parents did not seek to have a GAL involved for their child.

{¶82} To the contrary, the idea that it would cost any two persons seeking to amicably terminate their marriage and to parent their son in the best way possible $155,083.83 to divorce is repugnant. Our courts should be open, accessible, and easy to navigate for parties seeking resolution of their disputes. Charging people well into the six figures under the threat of a court order, making them fear arrest if they cannot or do not pay, is the anthesis of accessibility.

{¶83} In conclusion, I would sustain Mother's third assignment of error in part. I would subtract $48,825 of the GAL's fees due to block-billing under *Rubino*. Of the remaining $106,258.83, I would remand the matter to the trial court for a consideration of Mother's ability to pay under Sup.R. 48.02(H) and for an assessment of whether the fees are reasonable in light of Jud.Cond.R. 2.13(C) and Hamilton County Court of Domestic Relations Loc.R. 10.5.

Please note:

The court has recorded its entry on the date of the release of this opinion.