DECISION.
{¶ 1} After 38 years of marriage, plaintiff-appellant Virginia Thompson filed for divorce from defendant-appellee Monroe Thompson in July 2001. (To avoid confusion, we refer to the Thompsons by their first names.) The couple's two children are now adults.
 {¶ 2} This divorce has remained unresolved despite almost five years of litigation. After the trial magistrate's initial decision, both parties filed objections that the domestic relations court overruled. Countless objections have ensued — all over whether there was an equitable division of the marital property. The issue before us now is whether the trial court properly addressed Monroe's retirement income and Social Security benefits as part of the marital property. It did the best it could with what it had.
 {¶ 3} Retirement benefits and pensions earned during a marriage are marital assets to be considered in dividing marital property.[1] And while Social Security benefits themselves are not subject to division in a divorce proceeding, a trial court may consider the parties' future Social Security benefits when dividing marital assets.[2] In this case, because Virginia failed to provide the court with any information about her income and living expenses, the court did not abuse its discretion in deciding that Monroe should retain a specific retirement account and his Social Security benefits.
 I. A Divorce {¶ 4} In the complaint, Virginia listed gross neglect and extreme cruelty as reasons why she was entitled to a divorce. Because Virginia reported that she feared for her safety, the court issued a restraining order against Monroe. Virginia refused to give the court any personal information, including employment, income, address, or basic living expenses, because, she said, she feared for her safety.
 {¶ 5} Virginia was not employed outside the home throughout most of the marriage. All the marital income at the time of the divorce was derived from retirement funds and Social Security. The marital property consisted of a house with equity of approximately $150,000, three automobiles, and various stocks, mutual funds, and insurance, with a total value of approximately $270,000.
 {¶ 6} The magistrate thoroughly reviewed the property interests. Additionally, the magistrate evaluated the abuse claims and stated that the evidence demonstrated that Monroe had used some minor physical force or restraint against Virginia throughout the marriage, but that it did not occur with such frequency or extent to warrant a division of the property other than on an equal basis. The magistrate then divided the marital assets, ordering that the house be sold, and that the house's equity and the marital stocks, mutual funds, and insurance be divided equally. The magistrate held that two monetary gifts of $20,000 and $5,000 from Virginia's mother were to be her separate property, and that a 1957 automobile brought into the marriage by Monroe was to be his separate property.
 {¶ 7} Over the last three years, Virginia objected to the magistrate's decision on the property division four separate times. All of these objections centered on the issue of spousal support from Monroe's retirement accounts and his Social Security benefits.
 {¶ 8} Through these successive hearings, the magistrate found that Monroe's various pension accounts generated a monthly retirement benefit of $1,172.43. In addition to the pension, Monroe received $1,423 in Social Security benefits monthly. Monroe testified that his monthly living expenses were $2,072, leaving him with about $523 per month.
 {¶ 9} Because Virginia refused to provide the court with any information on her employment, income, or living expenses, the magistrate held that Monroe should retain his pension and Social Security. The magistrate stated that had Virginia provided the court with information on her employment, income, and living expenses, the court might have ruled otherwise on the issue of Monroe's pension plans and her request for spousal support.
 II. Standard of Review {¶ 10} The Ohio Supreme Court has stated that a trial court must have discretion to do what is equitable upon the facts and circumstances of each divorce case.[3] "Of course, a trial court's discretion, though broad, is not unlimited. A reviewing court may modify or reverse a property division, if it finds that the trial court abused its discretion in dividing the property as it did."[4]
 {¶ 11} The Ohio Supreme Court has also held that a trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property.[5]
And there is no presumption that marital property be divided equally upon divorce. Rather, a potentially equal division should be the starting point of the trial court's analysis before it considers the factors listed in R.C. 3105.171 and all other relevant factors.[6]
 {¶ 12} "A Court of Common Pleas has broad discretion to determine what property division is equitable in a divorce proceeding. The mere fact that a property division is unequal does not, standing alone, amount to an abuse of discretion."[7]
 {¶ 13} In reviewing the equity of a property division, an appellate court is bound to follow various guidelines, including that the trial court's judgment cannot be disturbed on appeal absent a showing that the court abused its discretion in formulating its division of the marital assets and liabilities of the parties.[8] The term "abuse of discretion" implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[9] Unreasonable means that no sound reasoning process supported the decision.[10]
 III. Retirement Benefits {¶ 14} Virginia's first assignment of error claims that the trial court abused its discretion by failing to address as a marital asset one of Monroe's retirement accounts. To be sure, retirement benefits and pensions earned during a marriage are marital assets to be considered in dividing marital property.[11]
 {¶ 15} The Ohio Supreme Court stated in Hoyt v. Hoyt that "the trial court must have the flexibility to make an equitable decision based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension plan, and the reasonableness of the result. Thus, any given pension or retirement fund is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets."[12]
And the trial court must attempt to preserve the pension or retirement asset so that each party can procure the greatest benefit.[13]
 {¶ 16} As the court in Hoyt noted, when the parties are of retirement age, it may be best for the trial court to consider the pension and retirement benefits as income. In this case, the magistrate did just that, finding that Monroe's only income was the $1,172.43 he received from pension and retirement accounts and the $1,423 he received in Social Security benefits.
 {¶ 17} While we agree with Virginia that the law clearly states that pension and retirement benefits are to be considered marital assets in dividing marital property, we do not agree that the trial court abused its discretion in not awarding her any additional support from Monroe's pension and retirement benefits.
 {¶ 18} Virginia refused to provide the court with any information about her employment, income, or living expenses. The court's hands were thus tied when it held that Monroe should retain his pension and retirement benefits.
 {¶ 19} Virginia may well deserve support from Monroe's income. But the court needed something upon which to base the division. By failing to provide the court with any information about her income and living expenses, she left the court with no option other than to leave the pension benefits as they were. The trial court did not know where, or whether, Virginia was working, or what her income or expenses were compared to Monroe's. How was the court to take income from Monroe and give it to Virginia? And if so, how much? Any award would have been made in the dark.
 {¶ 20} The retirement account in question, combined with Monroe's Social Security benefits, was his sole income to meet his basic living expenses. We cannot conclude that the trial court abused its discretion when it allowed Monroe to retain this account when Virginia failed to provide the court with any information on which to base any other decision.
 IV. Social Security Benefits {¶ 21} Virginia's second assignment of error maintains that the court abused its discretion by failing to include Monroe's Social Security benefits in the property division.
 {¶ 22} Social Security benefits themselves are not subject to division in a divorce proceeding.[14] But a trial court may consider the parties' future Social Security benefits when dividing marital assets in a divorce action.[15] The Ohio Supreme Court, in Neville v. Neville, acknowledged that while pension and retirement benefits are marital assets subject to division, Social Security benefits are characterized differently under federal law.[16] Federal law forbids the transfer or assignment of Social Security benefits, thus protecting these benefits from "execution, levy, attachment, or other legal process."[17]
 {¶ 23} But the court in Neville stated that a trial court should consider all relevant factors when dividing marital assets.[18] "Although a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution."[19] Therefore, a trial court may consider the parties' present or future Social Security benefits in relation to all marital assets.
 {¶ 24} In this case, the magistrate considered Virginia's objections to the failure to award her a distribution from Monroe's Social Security benefits. But Virginia's contention that the Social Security benefits should have been divided is incorrect and contrary to Ohio law. Hoyt clearly states that Social Security benefits are not subject to division. A trial court may only take into consideration Social Security benefits when evaluating all the marital assets.
 {¶ 25} The trial court considered Monroe's Social Security benefits as part of his income. These benefits and his retirement accounts allowed Monroe to meet his basic living expenses. Although the court was not able to make a distribution from Monroe's Social Security, it could have considered the benefits in the property division.
 {¶ 26} The court did not do so in this case because Virginia failed to provide the court with any information about her income and living expenses. As we stated in addressing the first assignment of error, had Virginia provided the court with information on her employment, income, and living expenses, the court might have granted her request for spousal support and thus could have taken into account Monroe's income from his Social Security benefits. But because the court had no idea of what Virginia's income was, how could it take anything away from Monroe? On what basis?
 {¶ 27} We cannot conclude that the trial court abused its discretion when it did not award a division of the Social Security benefits (which would have been contrary to law) or consider the benefits for spousal support when Virginia failed to provide any information about her income or expenses.
 {¶ 28} The trial court's decision did not leave Virginia destitute. Of course, not knowing her employment or income, we have no idea of her financial status. But in addition to the almost $200,000 she received through the division of marital assets — from the sale of the house and division of marital stocks, mutual funds, and insurance — Virginia may also be aided by the same accounts at issue today. The pension plan in question is a joint-life plan, and Virginia would receive benefits if Monroe predeceases her. Furthermore, upon reaching age 62, Virginia is eligible to receive a benefit equal to 37.5% of Monroe's total Social Security benefit, with the percentage increasing each year until it reaches 50% by age 65.
 {¶ 29} We overrule Virginia's assignments of errors and affirm the trial court's judgment.
Judgment affirmed.
Hildebrandt, P.J., and Gorman, J., concur.
[1] See Hoyt v. Hoyt (1990), 53 Ohio St.3d 177, 178,559 N.E.2d 1292.
[2] Id. at 178; see, also, Neville v. Neville,99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, at ¶ 4.
[3] See Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355,421 N.E.2d 1293.
[4] Id., citing Section 3(B), Article IV, of the Ohio Constitution; App.R. 12.
[5] See Berish v. Berish (1982), 69 Ohio St.2d 318, 319-320,432 N.E.2d 183.
[6] Cherry, 66 Ohio St.2d 348, paragraph one of the syllabus.
[7] Id., paragraph two of the syllabus.
[8] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 218,450 N.E.2d 1140; Cherry, 66 Ohio St.3d at 355; Dennison v.Dennison (1956), 165 Ohio St. 146, 150, 134 N.E.2d 574.
[9] Blakemore, 5 Ohio St.3d at 219, quoting State v. Adams
(1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.
[10] See AAAA Enterprises, Inc. v. River Place Community UrbanRedevelopment Corp. (1990), 50 Ohio St.3d 157, 161,553 N.E.2d 597; State v. Echols (1998), 128 Ohio App.3d 677, 669-670,716 N.E.2d 728.
[11] R.C. 3105.171(A)(3)(a)(ii). See, also, Hoyt v. Hoyt
(1990), 53 Ohio St.3d 177, 178, 559 N.E.2d 1292.
[12] Hoyt, 53 Ohio St.3d at 180, 559 N.E.2d 1292.
[13] Id. at 181.
[14] Id. at 178.
[15] See Neville v. Neville, 99 Ohio St.3d 275,2003-Ohio-3624, 791 N.E.2d 434, at ¶ 4.
[16] Id. at ¶ 6.
[17] Id. at ¶ 7, quoting Section 407(a), Title 42, U.S. Code.
[18] Id. at ¶ 11.
[19] Id.