[Cite as *Edje v. Holmes*, 2024-Ohio-1663.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| LOUITO EDJE, | : | APPEAL NO. C-230286 |
| | | TRIAL NO. DR-2200117 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| SYLVESTER HOLMES, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: May 1, 2024

*Barbara J. Howard Co., LPA, Barbara J. Howard* and *Rachel H Myers,* for Plaintiff-Appellee,

*Sylvester Holmes,* pro se.

**Boск, Presiding Judge.**

{¶1}   In this divorce case, defendant-appellant Sylvester Holmes challenges the trial court's adoption of the magistrate's decision. He contests several factual findings in the division of property, including the characterization and valuation of the real and personal property at issue. But Holmes failed to file a transcript both when he objected to the magistrate's decision and on appeal, which precludes a meaningful review of these factual findings.

{¶2}   Holmes also claims that the trial court ignored his financial contributions to the purchase of real property during the marriage, and it was therefore an abuse of discretion to award the equity in that property to plaintiff-appellee Louito Edje. But because the magistrate found that Holmes financially abandoned Edje and unfairly burdened her with financial obligations, it was reasonable to award Edje the equity in the property as part of an equitable division of property.

{¶3}   Holmes maintains that it was an abuse of discretion to deny his request for spousal support, to award him one-fourth of Edje's retirement account, and to award Edje attorney fees. But because the magistrate found that Holmes was not "working to his fullest capacity" and failed to produce any evidence of his claims that he was unable to find employment, it was reasonable to deny him spousal support. An unequal division of retirement accounts was reasonable because Holmes failed to comply with discovery and disclosure orders regarding his income, retirement, and assets. Likewise, his noncompliance with discovery requests and court orders justified awarding Edje attorney fees.

{¶4}   We overrule Holmes's six assignments of error and affirm the trial court's judgment.

2

## I. <u>Facts and Procedure</u>

{**¶5**}  In 2019, Edje, a physician, married Holmes, an attorney, in Italy. Within the first year of the marriage, the two purchased a $753,000 house on Spyglassridge Drive in Cincinnati. But by December 2021, the two were living separately. The following month, Edje filed for divorce.

{**¶6**}  The magistrate held a two-day hearing related to the division of property, spousal support, and attorney fees. In her decision, the magistrate identified the Spyglassridge property as "marital/mixed real estate property subject to equitable division in this case." She awarded the Spyglassridge property to Edje free and clear of any claims by Holmes. The magistrate found that Holmes had contributed $84,000 of the $177,189.90 that had been "paid toward the initial purchase of the home" and that Edje had paid the remainder. Further, Edje withdrew $49,000 from her retirement fund for the purchase. The magistrate found that Holmes was not entitled to share the equity or paydown in the marital residence because he failed to 1.) financially contribute in any substantive manner to the marital obligations—more than $28,000—that arose after the couple purchased the house; 2.) compensate people working on the house, leaving that financial burden on Edje; and 3.) obtain employment or contribute to household and mortgage expenses during most of the marriage. Further, the magistrate sought to credit Edje for her financial losses incurred from contributing from her retirement towards the home's purchase.

{**¶7**}  The magistrate awarded Edje, among other personal property, a pool table "and the crystal vase gifted from her mother." Apparently, the parties disputed whether a vase in Holmes's possession was that vase gifted to Edje from her mother. To ensure that Edje received her vase, the magistrate ordered Holmes to "deliver and present the crystal vase purported to have been purchased by him as shown in Exhibit

B for inspection by [Edje]. If this vase is determined by [Edje] to in fact be the mother's gifted vase, the same shall be awarded to [Edje]."

{¶8} Turning to the retirement accounts, the magistrate found that Holmes failed to provide financial records, including retirement accounts, which prevented her from determining the extent of the retirement assets to create an equal distribution. The magistrate found that an unequal division of the retirement funds was equitable because of Holmes's "failure to comply with discovery and disclosure orders as to [his] income, retirement, assets and [his] overall lack of credibility." The magistrate awarded Holmes "$10,582.60 which represents twenty-five percent (25%) of the marital portion of [Edje]'s retirement."

{¶9} The magistrate denied Holmes's request for spousal support, which she found was "neither appropriate nor reasonable" under R.C. 3105.18.

{¶10} Finally, the magistrate awarded Edje $3,750 in attorney fees due to Holmes's "repeated failure to comply with discovery requests and mandatory disclosures in a timely fashion."

{¶11} Holmes objected to the magistrate's decision to 1.) award the vase and Spyglassridge property to Edje, 2.) classify the parties' pensions as separate property, and 3.) deny Holmes spousal support. But Holmes failed to file a transcript of proceedings. He sought to provide an audio recording of the hearings in lieu of a transcript. The trial court denied that request. The trial court also denied Holmes's objections and adopted the magistrate's decision. In doing so, the trial court highlighted the lack of a transcript of the proceedings. Following a hearing on the merits, the trial court issued a divorce decree.

## II. Law and Analysis

{¶12} Holmes raises six assignments of error, contesting the trial court's adoption of the magistrate's decision. Specifically, he takes issue with the division of property, award of attorney fees, and denial of spousal support.

{¶13} As an initial matter, Holmes relies on several exhibits attached to his appellate brief that were not submitted to the trial court and are otherwise not part of the record. We cannot consider them. *See Chia Chi Ho v. Carlos Chua Co,* 1st Dist. Hamilton No. C-220319, 2023-Ohio-2969, ¶ 15. On appeal, " 'we are limited to the record before the trial court.' " *Id.,* quoting *State v. Wilson,* 2d Dist. Clark No. 2018-CA-2, 2020-Ohio-2962, ¶ 29. " '[T]he record on appeal' is composed of three categories of documents identified in App.R. 9: '[t]he original papers and exhibits thereto filed in the trial court[;] the transcript of proceedings, if any, including exhibits[;] and a certified copy of the docket and journal entries prepared by the clerk of the trial court.' " *State v. Bumu*, 1st Dist. Hamilton No. C-160492, 2017-Ohio-6901, ¶ 13, quoting App.R. 9(A)(1). This court will disregard any exhibits that are not in the record when we consider the merits of Holmes's arguments.

### *Property divisions in divorce proceedings*

{¶14} We begin with the trial court's division of property, which is governed by R.C. 3105.171. We review the trial court's adherence to R.C. 3105.171's statutory directives de novo. *Stapleton v. Stapleton*, 1st Dist. Hamilton No. C-210329, 2022-Ohio-3018, ¶ 23. In divorce proceedings, the trial court must identify marital and separate property, and "divide the marital and separate property equitably between spouses." R.C. 3105.171(B).

{¶15} But there is no one-size-fits-all formula for fashioning an equitable division of property. *See Berish v. Berish*, 69 Ohio St.2d 318, 321, 432 N.E.2d 183

(1982). Therefore, in divorce cases, we afford deference to the lower court as it "fulfill[s] its weighty responsibility [and] resolv[es] the property issues based on the relevant facts and circumstances of each unique case." *Stapleton* at ¶ 27, citing *Berish* at 321. Consistent with this deference, we typically review an equitable division of property for an abuse of discretion. *Id.* When an appeal raises a factual issue as to the value or characterization of property, we review the sufficiency or manifest weight of the evidence. *Carter v. Carter*, 1st Dist. Hamilton No. C-230322, 2024-Ohio-1046, ¶ 19, citing *McKenna v. McKenna*, 1st Dist. Hamilton No. C-180475, 2019-Ohio-3807, ¶ 9-10.

{**¶16**} But significantly, Holmes failed to file a transcript when he objected to the magistrate's decision. In these circumstances, "the trial court presumes that the magistrate's factual findings are correct." *Gregory v. Gregory*, 1st Dist. Hamilton No. C-180444, 2019-Ohio-5210, ¶ 22. To review " 'a judgment rendered without the benefit of a transcript or affidavit, [this] court only considers whether the trial court correctly applied the law to the facts as set forth in the magistrate's decision.' " *Fogt v. Fogt*, 3d Dist. Defiance No. 4-18-10, 2019-Ohio-1403, ¶ 17, citing *In re Estate of Stanford*, 2d Dist. Montgomery No. 23249, 2010-Ohio-569, ¶ 22, quoting *In re Estate of Lucas*, 2d Dist. Montgomery No. 23088, 2009-Ohio-6392, ¶ 32, citing *Ross v. Cockburn*, 10th Dist. Franklin No. 07AP-967, 2008-Ohio-3522, ¶ 5-6. Specifically, our review is "limited to determining if the trial court abused its discretion" in its application of law to the magistrate's factual findings. *In re Adoption of S.J.M.H.,* 1st Dist. Hamilton No. C-130683, 2014-Ohio-3565, ¶ 33. An abuse of discretion means that the trial court's decision-making must be unreasonable, arbitrary, or unconscionable. *Owens v. Owens*, 1st Dist. Hamilton No. C-210488, 2022-Ohio-3450, ¶ 14.

{¶17} When dividing marital property, R.C. 3105.171(C)(1) prescribes an equal division of property unless dividing the property equally would be inequitable. If an equal division is found to be inequitable, property must be divided in the manner the court determines equitable. R.C. 3105.171(C)(1). What is equitable depends on the value of the property and the trial court's consideration of the nonexhaustive statutory factors listed in R.C. 3105.171(F). *See Stapleton*, 1st Dist. Hamilton No. C-210329, 2022-Ohio-3018, at ¶ 23. The trial court must consider:

(1) The duration of the marriage;

(2) The assets and liabilities of the spouses;

(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;

(4) The liquidity of the property to be distributed;

(5) The economic desirability of retaining intact an asset or an interest in an asset;

(6) The tax consequences of the property division upon the respective awards to be made to each spouse;

(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;

(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;

(9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;

(10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F).

**{¶18}** What is equitable turns on the totality of the circumstances. *See Roetting v. Roetting*, 12th Dist. Butler No. CA2014-06-128, 2015-Ohio-2461, ¶ 21; *see also Brown v. Brown*, 1st Dist. Hamilton No. C-040341, 2005-Ohio-1997, ¶ 13 ("A reviewing court is limited to determining whether, considering the totality of the circumstances, the trial court's disposition of marital property was an abuse of discretion.").

1. <u>We affirm the trial court's award of equity in the Spyglassridge property to Edje</u>

**{¶19}** In his first assignment of error, Holmes argues that the trial court erred when it adopted the magistrate's equitable property division. He begins with a claim that "[t]he trial court abused its discretion by ruling that the Appellee met her burden of proof of providing clear and convincing evidence that the Marital Real Property purchased during the marriage was her separate property under Ohio Domestic Relations law."

*A. We cannot review factual determinations without a transcript*

**{¶20}** Holmes relies on exhibits attached to his appellate brief to argue that the magistrate undervalued his contribution to the initial payment of the Spyglassridge property. But again, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail*, 54 Ohio St.2d 402, 402, 377 N.E.2d 500 (1978). The record does include a May 2020 letter in which Holmes agreed to transfer $78,000 to Edje. Holmes is correct that the magistrate mistakenly found that he agreed to transfer $84,000 to Edje in that letter. But the magistrate

8

*overvalued* his contribution, so this error is harmless. *See* Civ.R. 61. The record includes an unsigned three-month lease for the Spyglassridge property and a December wire transfer to Edje, which Holmes claims show that the magistrate incorrectly valued his contribution.

**{¶21}** But "when a party challenges the trial court's finding of fact as to the characterization of property as separate or marital, we must review that determination under a manifest-weight-of-the-evidence standard." *Dunn v. Dunn*, 1st Dist. Hamilton Nos. C-010282 and C-010292, 2002-Ohio-6247, ¶ 12. Likewise, valuation of property is a factual issue. But Holmes's failure to provide a transcript prevents a meaningful review of these factual findings. *See Elsner v. Birchall*, 2018-Ohio-2521, 114 N.E.3d 791, ¶ 31 (8th Dist.).

**{¶22}** Holmes correctly notes that the magistrate failed to set a value for the debt associated with the work on the Spyglassridge property. Before fashioning a division of property, the "trial court must select a valuation date and determine a value for property found to be a marital asset." *Stapleton*, 1st Dist. Hamilton No. C-210329, 2022-Ohio-3018, at ¶ 24. But "[w]hen a party fails to provide the court with evidence as to the value of an item, the party may be found to have waived the right to appeal with regard to that asset." *Smith v. Smith*, 2017-Ohio-44, 80 N.E.3d 1091, ¶ 26 (6th Dist.), citing *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, ¶ 21; *see Gregory v. Falcon*, 5th Dist. Licking No. 2022 CA 00051, 2023-Ohio-1741, ¶ 30; *see also Machesky v. Machesky*, 4th Dist. Ross No. 10CA3172, 2011-Ohio-862, ¶12; *Sieber v. Sieber*, 2015-Ohio-2315, 37 N.E.3d 776, ¶ 34 (12th Dist.). The limited record before us contains no evidence from Holmes of the debt. This argument is therefore waived.

**{¶23}** And regardless of these fact-based arguments, we disagree that the magistrate characterized the Spyglassridge property as Edje's separate property. Rather, the magistrate identified the house as marital/mixed property.

*B. Awarding Edje the equity in the property was reasonable*

**{¶24}** Holmes appears to argue that it was inequitable to award Edje the entire Spyglassridge property due to his contributions toward the initial purchase. We understand this argument as an assertion that the award was an abuse of discretion. But we disagree with that assertion.

**{¶25}** The magistrate "considered all of the evidence presented and the applicable law[1] to arrive at an equitable allocation as it relates to property division." The magistrate took Holmes's $84,000 contribution towards the initial payment into account but found that Holmes did not honor their agreement to split the mortgage payments and abandoned Edje financially. The magistrate considered this an "unfair burden." She found that Edje was "solely financially responsible for the mortgage payments and maintenance." From June 2020 to December 2021, Edje alone paid down $10,901.87 on the principal balance. Edje was also left to pay various contractors and maintenance workers for work performed on their house. These findings support the magistrate's awarding the entire equity in the Spyglassridge property to Edje.

**{¶26}** In *Grimes v. Grimes*, 2d Dist. Greene No. 2013-CA-047, 2014-Ohio-729, the Second District upheld an award of the entire equity in the marital residence to the wife as an appropriate exercise of discretion where the husband "unjustifiably failed to work and that his refusal to work placed an unfair burden on [the wife] to be

---

[1] The magistrate's decision explained that it must consider the factors "provided in R.C. 3105.17," but this appears to be a clerical error.

responsible for the parties' living expenses." *Id*. at ¶ 13. Similar to *Grimes,* the magistrate's findings in this case state that Holmes was unemployed, was not "working to his fullest capacity in his field," and "placed an unfair burden on [Edje] to be responsible for [the] parties' living expenses." Indeed, the magistrate explained that Holmes left his position as an attorney with a corporation in which he earned $200,000 per year to accept a part-time position, only to be fired from that position six months into the marriage.

{¶27} The trial court's awarding the entire equity in the property to Edje was not an abuse of discretion.

### C. *Holmes waived any equitable-estoppel argument*

{¶28} Holmes turns his focus to emails from Edje that are in the record—emails that he claims are "clear evidence of the parties' intent." In the emails, Edje instructs their attorney to include Holmes's name on the deed to the house. Relying on these statements, he cites the doctrine of equitable estoppel to argue that she cannot now claim the Spyglassridge property as separate property. But Homes failed to raise this issue in his closing argument or in his objections to the magistrate's decision and therefore has forfeited his right to raise it for the first time on appeal. *See Linder v. Ohio Dept. of Aging*, 1st Dist. Hamilton No. C-210247, 2022-Ohio-177, ¶ 15.

{¶29} In sum, Holmes's arguments related to the valuation of his financial contributions are unreviewable, his challenge to the characterization of the property is both unreviewable and a misreading of the magistrate's decision, and awarding Edje the entire equity in the property was not an abuse of discretion. We overrule Holmes's first assignment of error.

2. The classifications of the pool table and vase are unreviewable

**{¶30}** In his second assignment of error, Holmes argues that the trial court abused its discretion when it awarded the vase and pool table to Edje as her separate property. Specifically, he claims that "[t]he [c]ourt abused its discretion in awarding [Edje] the vase as it was against the manifest weight of the evidence." Likewise, he argues that it "abused its discretion in awarding [Edje] the pool table as it was against the manifest weight of the evidence."

**{¶31}** But these arguments run into a recurring problem for Holmes. Classification of property as marital or separate property are questions of fact and are " 'reviewed under the distinct sufficiency-and-weight-of-the-evidence standards.' " *Tyra v. Tyra*, 1st Dist. Hamilton No. C-210392, 2022-Ohio-2504, ¶ 11, quoting *Boolchand v. Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, ¶ 9, citing *McKenna v. McKenna*, 1st Dist. Hamilton No. C-180475, 2019-Ohio-3807, ¶ 9. Even if we were able to weigh the evidence, we are instructed to be "mindful of the presumption in favor of the finder of fact." *Id.* But because Holmes failed to file a transcript, we proceed under an assumption that the magistrate's findings are correct.

**{¶32}** Under R.C. 3105.171(B), a court must determine what constitutes marital property and separate property. Marital property is " 'real or personal property owned by either spouse, including retirement benefits acquired during the marriage and interest in those benefits. Marital property does not include any separate property.' " *Mullins v. Mullins*, 1st Dist. Hamilton No. C-220389, 2023-Ohio-3266, ¶ 14, quoting *Devito v. Devito*, 1st Dist. Hamilton No. C-210523, 2022-Ohio-2563, ¶ 22. In contrast, separate property is " 'property acquired before the marriage and certain other property, such as inheritances and gifts, acquired by one spouse during

the marriage. A spouse may retain separate property despite having commingled it with marital property, because as long as it is traceable, separate property retains its identity.' " *Id.*

**{¶33}** The magistrate awarded the parties their personal property, which for Edje included the pool table and "the crystal vase gifted from her mother." In her findings of fact, the magistrate explained that Edje requested "a crystal vase given to her by her mother," which Edje believed was in Holmes's possession. The magistrate explained that Holmes "denies the vase he currently has in his possession belongs to [Edje] or is the same vase gifted" to her. In her conclusions of law, the magistrate's award of the vase included the following instruction:

> To ensure [Edje] receives the awarded item, [Holmes] must also deliver and present the crystal vase purported to have been purchased by him as shown in Exhibit B for inspection by [Edje]. If this vase is determined by [Edje] to in fact be the mother's gifted vase, the same shall be awarded to [Edje].

**{¶34}** Holmes is correct that his evidence includes a receipt for purchase of a glass vase and social media posts with pictures of the vase that predate the marriage. But again, his arguments emphasize what Edje's testimony did and did not establish. These arguments are precisely why " 'a manifest weight argument * * * is impossible to properly evaluate in the absence of a complete transcript of proceedings to review. * * * Thus, in the absence of a complete record sufficient for appellate review, we must presume the regularity of the proceedings below.' " *Givens v. Yates*, 7th Dist. Belmont Nos. 22 BE 0043 and 22 BE 0044, 2023-Ohio-4731, ¶ 10, quoting *Palmer v. Palmer*, 7th Dist. Belmont No. 12 BE 12, 2013-Ohio-2875, ¶ 2. Plus, the magistrate recognized the possibility that two vases existed. She did not award Edje Holmes's glass vase, but

13

instead permitted Edje to inspect the vase of which Holmes claimed ownership to determine if it was, in fact, the vase gifted to her by her mother.

**{¶35}** Turning to the pool table, Holmes argues that "[i]n a subsequent motion on June 18, 2023, to clarify the Magistrate's decision on dividing property at the Marital Real Property, the Magistrate expressed an intent to give [Edje] ownership and possession of a pool table on the basis [Holmes] failed to reference the pool table while on the stand." Again, we are unable to make a meaningful review of the evidence without the transcripts, which Holmes failed to file. Holmes is correct that Edje acknowledged in her written closing arguments that the pool table was Holmes's separate property. But courts are not *required* to accept a party's concession. *See State v. Smith*, 2019-Ohio-4706, 149 N.E.3d 184, ¶ 9 (2d Dist.), fn. 3; *see also State v. Hermes*, 6th Dist. Ottawa Nos. OT-22-026 and OT-22-027, 2023-Ohio-2011, ¶ 26; *State v. Gabbard*, 12th Dist. Butler No. CA2020-12-125, 2021-Ohio-3646, ¶ 20.

**{¶36}** Holmes also marshals another equitable-estoppel argument regarding the pool table, based on Edje's representation to the magistrate that the pool table was Holmes's separate property. But once again, he failed to raise this argument when he objected to the magistrate's decision, and it is therefore forfeited on appeal.

**{¶37}** Without a transcript, Holmes's claims regarding the vase and pool table are unreviewable. We overrule his second assignment of error.

3. <u>The trial court's attorney-fees award was reasonable</u>

**{¶38}** In his third assignment of error, Holmes argues that awarding Edje attorney fees constituted an abuse of discretion. He claims that Edje's attorney's misconduct, his lack of financial resources, and his misunderstandings about discovery timelines all cut against an award of attorney fees.

14

**{¶39}** In a divorce action, a court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." R.C. 3105.73(A). In determining whether an award is equitable, "the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate." *Id.* We review the trial court's attorney-fees award for an abuse of discretion. *Morrison v. Walters,* 1st Dist. Hamilton Nos. C-220643 and C-220644, 2023-Ohio-2887, ¶ 12 (*"Morrison II"*), quoting *Patterson v. Patterson*, 197 Ohio App.3d 122, 2011-Ohio-5644, 966 N.E.2d 898, ¶ 7 (1st Dist.).

**{¶40}** The trial court awarded Edje $3,750 in attorney fees. The magistrate deemed that award "reasonable based upon [Holmes's] repeated failure to comply with discovery requests and mandatory disclosures in a timely fashion." She noted that Homes even failed to comply with a court order compelling his compliance. That order required Holmes to respond to Edje's discovery requests by August 15, 2022. But two weeks after that deadline, he failed to "supplement/submit sworn answers to the itemized interrogatories and only partial and late compliance with the previously unsubmitted document requests."

**{¶41}** Clearly, pretrial conduct is relevant to whether an attorney-fees award is equitable. A court may award attorney fees due to an opposing party's "delayed, incomplete, and sometimes evasive" discovery responses that "prolong[ed] the proceedings." *Bain v. Levinstein,* 8th Dist. Cuyahoga No. 94313, 2010-Ohio-5596, ¶ 15. That is so because when "one party's improper actions force the other to turn to the court[,] * * * principles of equity allow the trial court to exercise its discretion in determining the appropriate awards based on the parties' respective behavior." *Padgett v. Padgett*, 10th Dist. Franklin No. 08AP-269, 2008-Ohio-6815, ¶ 17.

**{¶42}** Holmes relies on Edje's testimony, which he claims was perjured, to argue that unclean hands prevented the court from awarding Edje attorney fees. But once again, we cannot review the trial testimony without the transcript. The attorney-fee award is reasonable considering the magistrate's factual findings. We overrule Holmes's third assignment of error.

4. The trial court reasonably denied Holmes's request for spousal support

**{¶43}** In his fourth assignment of error, Holmes challenges the trial court's decision to deny his request for spousal support from Edje. He requested, at a minimum, $15,000 in spousal support.

**{¶44}** Spousal-support determinations are an exercise of a court's broad discretion, which we will not reverse absent an abuse of discretion. *Morrison v. Walters*, 1st Dist. Hamilton No. C-210398, 2022-Ohio-1740, ¶ 3 (*"Morrison I"*), quoting *Reese v. Reese*, 2019-Ohio-2810, 139 N.E.3d 1288, ¶ 11 (1st Dist.).

**{¶45}** Following an equitable division of property, the trial court "may award reasonable spousal support to either party." R.C. 3105.18(B). The trial court must consider the following factors when determining if an award of spousal support is appropriate and reasonable:

(a) The income of the parties, from all sources * * *;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶46} The magistrate found that awarding Holmes spousal support was not appropriate or reasonable under R.C. 3105.18. Holmes disagrees and appears to argue that the income of the parties under R.C. 3105.19(C)(1)(a) and his lost income

17

production capacity due to his marital responsibilities under R.C. 3105.18(C)(1)(m) support an award of spousal support.

{¶47} Holmes asserts that Edje misled Holmes into thinking "she would follow marriage vows faithfully and be a supportive partner." He maintains that this belief contributed to his decision to "accept[] a new jobthat [sic] paid less than 50% of my previous salary" because it "allowed [Holmes] to work remotely" and allowed him "to move to Cincinnati where [Edje] had secured employment." But she "changed the narrative" at trial. As for her income, Holmes claims that Edje misrepresented her income at the hearing and in her evidence. But just as the trial court was obligated to accept the magistrate's factual findings because Holmes had failed to file a transcript, we too are restrained from any inquisition into the facts surrounding her income.

{¶48} The magistrate found that Holmes's current annual income is $49,020, and Edje's is $369,249. There is a significant disparity, just as Holmes contends. The magistrate also explained that Holmes earned in excess of $200,000 annually as a full-time corporate attorney, but "voluntarily left that employment and accepted part-time employment [] in anticipation of heading toward retirement age and to be able to work remotely." And she explained that after Holmes was terminated from his part-time position, he "claims to be so far unsuccessful in finding legal work."

{¶49} The party requesting support " 'has the burden of producing evidence as to any of the R.C. 3105.18(C)(1) factors it wants considered, and must provide facts tending to prove its version of the manner in which such factors should be applied.' " *Morrison I,* 1st Dist. Hamilton No. C-210398, 2022-Ohio-1740, at ¶ 8, quoting *Hunley v. Hunley*, 12th Dist. Clermont No. CA2019-12-101, 2020-Ohio-5053, ¶ 27. And relevant here, "[d]eterminations of earning ability are not limited to current income, 'but may also hold a person accountable for the amount of money the person could

have earned if he or she had made the effort.' " *Id.* at ¶ 8, quoting *Schenck v. Schenck*, 12th Dist. Butler No. CA2012-08-150, 2013-Ohio-991, ¶ 17. The magistrate found that Holmes "did not provide any evidence of physical or mental impairment or limitations on his ability to work."

{¶50} Recently in *Morrison I,* we affirmed the trial court's decision to deny spousal support to Walters, a retiree, despite "a considerable difference" in the parties' current incomes, because of Walters's preretirement income that was "comparable to what Ms. Morrison now makes." *Morrison I* at ¶ 6. We rejected Walters's claim that no company would hire him because his IT "skills are six years out of date" as "conclusory statements" that failed to "convince us that Mr. Walters does not have viable, marketable skills that could generate substantial income if he so desired." *Id.* Plus, this court reasoned that Walters "left the marriage with no debt, ample financial resources, and assets and skills substantial enough to provide a standard of living comparable to the one he enjoyed during the marriage." *Id.* at ¶ 8. Finally, this court explained that Walters was unable to "complain if the R.C. 3105.18(C)(1) factor regarding earning ability did not come out quite the way that he wanted, particularly when he failed to substantiate his position with adequate evidence." *Id.* at ¶ 8.

{¶51} Just as in *Morrison I,* the magistrate could have reasonably concluded that Holmes is underemployed and has "assets and skills substantial enough to provide a standard of living comparable" to that during the marriage. Indeed, the magistrate found that Holmes, armed with decades of experience as an attorney with a $200,000 annual salary, did "not appear to be working to his fullest capacity in his field." It was therefore reasonable to conclude, based on these factual findings, that spousal support was not appropriate.

{¶52} We overrule Holmes's fourth assignment of error.

19

5. <u>The trial court's division of retirement funds and pensions was reasonable</u>

**{¶53}** Holmes's fifth assignment of error challenges his award of 25 percent of the portion of Edje's retirement benefits accrued during the marriage. He claims that the magistrate failed to follow the relevant statutory mandates. He recognizes that the law does not require an equal division of pension benefits and that a court may deviate from an equal division if equity and fairness support such a deviation, but he maintains that the deviation in this case lacks an appropriate rationale. In support, Holmes cites "*Brown v. Brown*, 54 Ohio St.3d 216 (1990)," which does not exist.[2]

**{¶54}** Marital property subject to a property division includes retirement benefits acquired during the marriage and "any 'currently' held 'interest' in the 'retirement benefits of the spouses' that was 'acquired by either or both of the spouses during the marriage.' " *Boolchand*, 1st Dist. Hamilton Nos. C-200111 and C-200120, 2020-Ohio-6951, at ¶ 6, quoting R.C. 3105.171(A)(3)(a)(iii). To divide pension and retirement benefits in an equitable and fair manner, " 'the trial court must apply its discretion based on the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result.' " *Id.* at ¶ 16, quoting *Hoyt v. Hoyt*, 53 Ohio St.3d 177, 179, 559 N.E.2d 1292 (1990). We review a trial court's division of retirement and pension benefits for an abuse of discretion. *Id.* at ¶ 9.

**{¶55}** The magistrate identified two retirement funds in Edje's name including one from her current employer held in IRA accounts. The magistrate found that "[t]he potential marital portion of these IRA's (taking tax implications into account) if

---

[2] Indeed, there was no Ohio Supreme Court case entitled *Brown v. Brown* released in 1990.

equally divided total $21,165.21." The magistrate awarded Holmes "$10,582.60, which represents twenty-five percent (25%) of the marital portion of [Edje]'s retirement."

{¶56} Holmes cites Edje's IRA statements to argue the marital portion of Edje's retirement and pension benefits totaled $62,954.22. He maintains that a 50 percent division of that total is a "guideline," "starting point," and later, a "statutory calculation that is standard." But the magistrate used an equal division as a starting point and simply factored the tax consequences into its division of Edje's retirement funds. The decision to reduce a retirement or pension plan "by estimated future tax consequences on distribution and, if so, by how much, are factors best left to the discretion of the trial court after hearing all the evidence and any expert testimony as to those tax consequences." *Noll v. Noll,* 55 Ohio App.3d 160, 163-164, 563 N.E.2d 44 (6th Dist.1989).

{¶57} Further, the magistrate found that Holmes was "employed for a period at the beginning of the marriage where he would have accumulated retirement/pension benefits." But, the magistrate explained, Holmes

> failed to provide Counsel and the Court with multiple financial records, including the balances of any retirement accounts as of the date of separation and in fact, denied any such earnings despite his employment at the time, making it impossible to determine the values of such retirement assets and offsets for purposes of an equal distribution.

So the magistrate found that an unequal division of Edje's retirement accounts was equitable "based on [Holmes's] failure to comply with discovery and disclosure orders as to [his] income, retirement, assets, and [his] overall lack of credibility."

21

{¶58} As with all other property to be divided, "[w]hen a party fails to provide the court with evidence as to the value of an item, the party may be found to have waived the right to appeal with regard to that asset." *Smith v. Smith*, 2017-Ohio-44, 80 N.E.3d 1091, ¶ 26 (6th Dist.), citing *Roberts v. Roberts*, 10th Dist. Franklin No. 08AP-27, 2008-Ohio-6121, ¶ 21. While a party has the right to be " 'less than forthcoming in the presentation of evidence * * * [as] a kind of trial strategy, it is not and cannot be grounds for an appeal.' " *Goebel v. Goebel*, 10th Dist. Franklin No. 15AP-61, 2015-Ohio-5547, ¶ 11, quoting *Walls v. Walls*, 4th Dist. Highland No. 94 CA 849, 1995 Ohio App. LEXIS 2005, at *8 (May 4, 1995). In the past, we have applied these principles to a division of retirement and pension benefits. *See Thompson v. Thompson,* 1st Dist. Hamilton No. C-050578, 2006-Ohio-2623, ¶ 18 ("Virginia refused to provide the court with any information about her employment, income, or living expenses. The court's hands were thus tied when it held that Monroe should retain his pension and retirement benefits.").

{¶59} All told, the division of Edje's retirement funds was not unreasonable considering the magistrate's inclusion of future tax consequences in her calculation and Holmes's failure to produce evidence of his retirement accounts. We overrule his fifth assignment of error.

6. The trial court considered Holmes's "legal arguments"

{¶60} In his sixth and final assignment of error, Holmes argues that the trial court erred when it overruled his objections to the magistrate's decision because of his failure to provide a transcript of the proceedings. He maintains that the trial court failed to consider the legal arguments he presented to the trial court in his objections.

{¶61} Civ.R. 53(D)(3)(b)(iii) instructs objecting parties that an objection to factual findings must "be supported by a transcript of all the evidence submitted to the

22

magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." *See Stricker v. Stricker,* 1st Dist. Hamilton No. C-060435, 2007-Ohio-3309, ¶ 11 ("A party objecting to a domestic relations magistrate's decision on the basis that the decision is unsupported by the evidence or contrary to the weight of evidence must submit to the court a typed transcript of all evidence relevant to the findings or order.").

**{¶62}** Once again, when an objecting party fails to file a transcript, the trial court must accept the magistrate's factual findings and apply the law to those facts. *See Gregory v. Gregory,* 1st Dist. Hamilton No. C-180444, 2019-Ohio-5210, ¶ 22; *see also Fogt,* 3d Dist. Defiance No. 4-18-10, 2019-Ohio-1403, at ¶ 13. The objecting party "cannot demonstrate error with respect to factual findings" without a transcript. *Bayview Loan Servicing, L.L.C. v. Likely,* 2017-Ohio-7693, 97 N.E.3d 1025, ¶ 12 (9th Dist.). Likewise, "when a party objects but does not provide the trial court with the transcripts necessary to review the objections, there are serious consequences for appellate review." *Id.*

**{¶63}** The trial court overruled Holmes's objections and explained that "[u]pon a careful and independent analysis of the record herein for all Defendant/Husband's objections, and absent a transcript which was not provided, the Court finds that the Magistrate's Decision is supported by competent and credible evidence."

**{¶64}** Despite Holmes's contention that the trial court ignored his legal arguments, his objections primarily disputed the magistrate's factual and credibility determinations. When he challenged the award of the Spyglassridge property, Holmes argued that "the [m]agistrate decided to go against the weight of the evidence to accept

[Edje's] bare statements," and that the magistrate "failed to weigh the evidence with respect to [the] marital property."

**{¶65}** When he referenced broad legal concepts, he failed to cite a single legal authority in support of his claims. For instance, he argued that the magistrate "applied a different standard of review []to the Defendant's interest in the case versus the standard that is applied to other similarly situated litigants" and "failed to apply standard Ohio domestic relations legal principles to this case." And these assertions were sprinkled throughout a plethora of factual contentions. To quote one federal district court, "facts dumped into a brief do not make a legal argument." *SYNY Logistics, Inc. v. Great Lakes Ins. SE,* N.D.Ill. No. 22-cv-764, 2023 U.S. Dist. LEXIS 176436, 17 (Sep. 30, 2023).

**{¶66}** We overrule Holmes's sixth assignment of error.

## III. Conclusion

**{¶67}** We overrule Holmes's six assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**WINKLER** and **KINSLEY, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.