[Cite as *Tirado v. Tirado*, 2025-Ohio-3170.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

EMILY MARGARET TIRADO, n.k.a.          :          APPEAL NO.     C-240666
EMILY KRANZ,                                                    TRIAL NO.      DR-2101456
                                                      :
    Plaintiff-Appellee,                       :

  vs.                                             :          *JUDGMENT ENTRY*

JOSHUA R. TIRADO,                          :

    Defendant-Appellant.                    :


This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.


**To the clerk:**

**Enter upon the journal of the court on 9/5/2025 per order of the court.**


**By:**_____
       **Administrative Judge**

[Cite as *Tirado v. Tirado*, 2025-Ohio-3170.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

EMILY MARGARET TIRADO, n.k.a. EMILY KRANZ,

    Plaintiff-Appellee,

vs.

JOSHUA R. TIRADO,

    Defendant-Appellant.

:
:
:
:
:
:
:

APPEAL NO. C-240666
TRIAL NO. DR-2101456

*O P I N I O N*

Appeal From: Hamilton County Court of Common Pleas, Domestic Relations Division

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 5, 2025

*Lane, Felix, & Raisbeck Co., LPA, Jeffrey A. Felix, Stephenie N. Lape, PLLC,* and *Stephenie N. Lape,* for Plaintiff-Appellee,

*Joshua R. Tirado,* pro se.

**Bock, Judge.**

{¶1} In this appeal, defendant-appellant Joshua R. Tirado ("Father") raises a variety of constitutional issues with the trial court's judgment. That judgment terminated an existing shared-parenting plan between Father and plaintiff-appellee Emily Margaret Tirado, n.k.a. Emily Kranz ("Mother"), granted Mother sole custody of their three children, and reduced Father's parenting time.

{¶2} But Father failed to file a hearing transcript and failed to develop legal arguments in support of his contentions. Accordingly, we overrule his two assignments of error and affirm the trial court's judgment.

## I. Factual and Procedural History

{¶3} During their almost-13-year marriage, Mother and Father welcomed three children into the world. Their oldest daughter, A.T., was born in 2008. Their second daughter, S.T., was born in 2010. And their son, M.T., was born in 2011.

{¶4} In 2021, Mother and Father petitioned to dissolve their marriage, and the trial court issued a decree later that year. The parties agreed that Father would pay $1,211.92 each month for child support as well as half of all healthcare expenses exceeding $388.70. The shared-parenting plan designated Mother the children's residential parent for school purposes and divided the children's time between Mother and Father on a rotating three-week schedule, which matched Father's work schedule. The children were to spend 13 days with Mother and eight days with Father. Sometime in 2023, the parties modified the parenting schedule, and Father had the children every week from Wednesday until Saturday afternoon.

{¶5} In April 2023, Mother agreed to forgive Father's child-support arrearage. In December 2023, Father moved to reduce his child-support obligation or alternatively, for child support from Mother. Apparently, Father lost his firefighter job.

3

**{¶6}** In January 2024, Mother moved for an order finding Father in contempt of court for nonpayment of child support, medical expenses, and school fees. The next month, Mother moved to terminate the shared-parenting plan, or alternatively, modify Father's parenting time, because of a "breathing issue" that M.T. had experienced when he was with Father.

**{¶7}** Before the hearing on Mother's motions, the magistrate ordered Mother and Father to consent to an evaluation by a court-appointed custody evaluator. The custody evaluator required access to "any records related to the child(ren), and/or parents, to confirm with any and all professionals who may provide information relative to said minor child(ren) and/or parents with respect to issues pending before this Court without the consent of the child and/or parents." Neither party objected.

**{¶8}** In August 2024, the magistrate lowered Father's child-support payments to $243.04 per month, citing Father's job loss. Weeks later, Father moved to modify the shared-parenting plan and opposed Mother's notice of intent to move to Indiana.

*Contempt and custody hearings*

**{¶9}** The trial court held hearings on Mother's and Father's motions in September and October 2024. Those transcripts are not in the record, but the parties' evidence is in the record.

**{¶10}** Father's evidence includes emails with the Hamilton County Domestic Relations Court's Dispute Resolution Department in which Father claims that Mother "decided to block [Father]" and was "forcing [him] to communicate through" their children. After the custody-evaluation interview, Father emailed the custody evaluator about what he perceived as "a sexist bias displayed." His other evidence consists of communications with the Child Support Enforcement Agency, a transcript of Father's

administrative hearing on his employment with the Norwood Fire Department, and a pension-benefit statement.

{¶11} Mother's evidence includes contentious messages between Mother and Father, and messages between Father and Stepfather.

{¶12} M.T.'s medical records reveal that in January 2024, Father brought M.T. to his pediatrician's office, where M.T. was "in obvious distress with extremely labored breathing." Medical staff (a nurse and two doctors) told Father that M.T. was in significant respiratory distress and needed a higher level of care at Cincinnati Children's Hospital. But Father responded that M.T. did not need to go to Children's Hospital and that Father could not afford ambulance or hospital bills. Instead, Father insisted upon a "steroid prescription." Medical staff called 911. After an ambulance arrived, Father insisted that M.T. did not need to go to Children's and, as power lines had been blown down, EMS had "better things to do with their time." But Father eventually allowed an "EMS team member" to evaluate M.T.—that EMS team member told Father that M.T. would benefit from further care at Children's Hospital. Father agreed to have EMS transport M.T. to Children's Hospital.

{¶13} The custody evaluation report in the record includes a recommendation to terminate the shared-parenting plan and reduce Father's parenting time. The custody evaluator concluded that Mother and Father "display a difficult relationship with one another[,] struggle to productively communicate," and rely on "the children as messengers." This relationship "fuels conflict and place[s] stress on the children." The custody evaluator noted that Mother falsely accused Father of not providing meals to the children and inappropriately burdened the children when she relied on Stepfather to communicate with Father. As for Father, his relationship with the children is amicable but Father was evasive during the interview and evaluation

process—Father "did not sign the provided releases for his mental health provider." In the interview, he "struggled to control his voice and use appropriate language."

**{¶14}** The trial court granted Mother's request to relocate to Indiana. Then, on November 1, 2024, the trial court issued a decision terminating the shared-parenting plan and "designating Mother as the sole residential parent and legal custodian of the children." In an accompanying standard parenting order, the trial court reduced Father's parenting time to Wednesday nights and alternate weekends.

## II. Analysis

**{¶15}** On appeal, in two assignments of error, Father raises a variety of constitutional issues related to the hearing and the trial court's judgment.

### A. *Father's arguments are unreviewable without a transcript*

**{¶16}** In his first assignment of error, Father argues that the trial court violated his rights under the First, Fourth, Sixth, and Fourteenth Amendments to the United States Constitution when it terminated the shared-parenting plan and granted Mother full custody of their three children. He also appears to argue that terminating the shared-parenting plan was contrary to the children's best interest.

**{¶17}** But Father failed to file a transcript of the hearing. Our review is limited to the record. *Edje v. Holmes*, 2024-Ohio-1663, ¶ 13 (1st Dist.). Under App.R. 9(B), the appealing party must "order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record." Appellants carry the burden of demonstrating error and must do so by referencing relevant portions of the record and providing appropriate transcripts that demonstrate error. *Estate of Nicolas Fite v. Univ. Hosp.*, 2004-Ohio-1266, ¶ 5 (1st Dist.). When an appealing party fails to file transcripts necessary for this court to resolve the assigned errors, we cannot review whether error exists and we have

6

"no choice but to presume the validity of the lower court's proceedings." *Id.*

{¶18} Without a transcript, we have no way of knowing what the trial court said at the hearing, if Father objected and presented his argument to the trial court, or what the trial court said in response. *See Jenkins v. State Farm Mut. Auto. Ins. Co.*, 2013-Ohio-1142, ¶ 34 (10th Dist.). Therefore, we have no choice but to presume that the trial court's proceedings were valid.

### B. *Father did not develop cognizable legal arguments*

{¶19} App.R. 16(A)(7) requires appellants to make "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." It is not this court's role to "'create an argument in support of an assignment of error where an appellant fails to develop one.'" *Vorhees v. Anderson Twp. Bd. of Zoning Appeals*, 2024-Ohio-4459, ¶ 50 (1st Dist.), quoting *Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 15 (1st Dist.).

1. First Amendment

{¶20} Father claims that the trial court judge admitted to "being sexist" after Stepfather forgot his daughter's birthday at the hearing. According to Father, this admission reveals the inherent gender biases in parenting and custody cases. Indeed, he claims that the custody evaluator recommended terminating Father's legal custody because Father is "a man." And the trial court "rubber stamped the decision of the social worker." To Father, his custody was terminated due to "the stereotypical sexist outcome to custody decisions across the United States."

{¶21} But Father does not develop his legal argument. Under his first assignment of error, Father's First Amendment argument reads, "1st Amendment- Sex=male. [Trial court judge] stated she is sexist." This provides no reasons describing

7

how the trial court's supposed sexism violated his First Amendment rights. He cited no legal authority, other than the First Amendment itself. He provided no citations to the record showing First Amendment violations. On this record and lack of argument, Father cannot prove that the trial court violated his First Amendment rights.

2. Sixth Amendment

**{¶22}** Father raises two Sixth Amendment claims. First, he argues that the trial court violated his right to a speedy trial under the Sixth Amendment when it continued the matter in progress to accommodate the custody evaluator's alleged defiance of a subpoena. Second, he maintains that the trial court denied him the right to face his accusers because M.T.'s pediatricians did not testify.

**{¶23}** The Sixth Amendment guarantees that "[i]n all *criminal prosecutions*, the accused shall enjoy the right to a speedy and public trial . . . [and] to be confronted with the witnesses against him." Child-custody matters are civil. *See C.F. L.W. v. L.B.,* 2010-Ohio-2796, ¶ 15 (6th Dist.). Sixth Amendment rights to a speedy trial and to confront witnesses do not apply in civil cases. *See id., see also Gallaugher v. Holmes Surgical Assocs., Inc.,* 2011-Ohio-1794, ¶ 17 (4th Dist.). Thus, Father had no rights under the Sixth Amendment to violate.

3. Fourteenth Amendment

**{¶24}** Father appears to argue that the trial court's decision infringed on his constitutional rights as a parent. Of course, "[a] parent's right to the custody of their child is essential and paramount." *In re D.V.,* 2022-Ohio-1024, ¶ 9 (1st Dist.). Historically, "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). But those rights are not absolute—a child's best interest must

8

always govern a trial court's custody determination. *See Siegel v. Siegel*, 2015-Ohio-1710, ¶ 6 (1st Dist.), citing R.C. 3109.04(B)(1).

{¶25} Father contends that the trial court acted contrary to the children's interest when it terminated the shared-parenting plan. He cites his testimony as proof that the trial court's decision should be reversed. He argues that no witnesses testified against him, M.T. has an individualized education plan at his current school, and he lost custody of his children despite doing "nothing wrong or illegal."

{¶26} Under R.C. 3109.04(E)(2)(c), the trial court "may terminate a prior final shared parenting decree that includes a shared parenting plan approved under [R.C. 3109.04](D)(1)(a)(i) . . . upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children." Said differently, the termination of a shared-parenting plan must be in the child's best interest. *See In re A.C.,* 2019-Ohio-2891, ¶ 18 (1st Dist.).

{¶27} A trial court's decision to award, modify, or terminate custody "rests within the sound discretion of the trial court." *Id.* at ¶ 12. We will not reverse the trial court's custody decision absent an abuse of discretion. *Id.* We will affirm a trial court's custody decision "that is supported by competent, credible evidence." *Id.*, citing *Bechtol v. Bechtol*, 49 Ohio St.3d 21, 23 (1990).

{¶28} There are two issues with Father's argument. First, Father did not cite the law governing the termination of shared-parenting plans or the applicable standard of review. As we have explained, "[i]t is not the job of this court to develop or root through the record and relevant authorities to find support for a party's position." *Guthrie v. Guthrie,* 2024-Ohio-5581, ¶ 12 (1st Dist.). In fact, "it is improper for an appellate court to construct legal arguments to support a party's position." *Johnson v. Cincinnati Metro. Hous. Auth.,* 2022-Ohio-26, ¶ 21 (1st Dist.). An appellant must "set

9

forth an argument demonstrating alleged error(s) in the decision of the court of common pleas." *Brock v. Hamilton Cty. Bd. of Zoning Appeals*, 2025-Ohio-717, ¶ 15 (1st Dist.).

**{¶29}** Second, Father did not file a transcript. And the lack of a hearing transcript "prevents a meaningful review of [] factual findings." *Edje*, 2024-Ohio-1663, at ¶ 21 (1st Dist.). Without a transcript, we "simply have no basis to determine that the trial court abused its discretion or that its decision is against the manifest weight of the evidence." *Redmond v. Wade*, 2017-Ohio-7192, ¶ 20 (4th Dist.).

**{¶30}** Consider the trial court's best-interest analysis, which relied on factual findings and conclusions drawn from the evidence in the record. It determined that (1) Mother's and Father's inability to communicate impacted the children's lives, (2) Father's refusal to cooperate with Stepfather created "friction," (3) Father could not be trusted to make "clear-headed, rational decision[s] about the children's medical care," (4) Father's uncooperative attitude with the custody evaluator frustrated the trial court's ability to understand the familial circumstances, and (5) Father's history of unnecessary risk-taking with the children suggests an "inability to prioritize the safety and security of his children." Without a transcript, we have no basis for departing from these factual findings and conclusions. And the trial court could determine, based on these conclusions and findings, that terminating the shared-parenting plan is in the children's best interest.

**{¶31}** In sum, Father cannot prevail on the merits of his arguments without a hearing transcript or arguments grounded in legal authority. So we overrule the first assignment of error.

C. *Father forfeited his Fourth Amendment argument*

**{¶32}** In his second assignment of error, Father argues that the trial court invaded his privacy and subjected him to an unreasonable search of his medical history in violation of the Fourth Amendment to the United States Constitution.

**{¶33}** But Father did not raise this argument to the trial court or object to the trial court's order that the parties submit to the custody evaluation. "[A] party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer*, 2019-Ohio-5156 ¶ 10. So, Father's failure to object forfeited all but plain error on appeal. *Burd v. Artis*, 2025-Ohio-625, ¶ 11 (1st Dist.).

**{¶34}** Critically, Father does not present a plain-error argument. An appellate court "'need not analyze plain error when the appellant has failed to make a plain-error argument.'" *Id.*, quoting *Marrs v. Mickel*, 2023-Ohio-4528, ¶ 15 (8th Dist.). Therefore, we overrule Father's second assignment of error.

### III. Conclusion

**{¶35}** We overrule the assignments of error and affirm the trial court's judgment.

Judgment affirmed.

**KINSLEY, P.J.,** and **MOORE, J.,** concur.